UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

TANGTANG ZHAO

No. 21 CR 505

Judge Manish S. Shah

## CONSOLIDATED MOTIONS *IN LIMINE*

The United States of America, by GLENN S. LEON, Chief of the Fraud Section, Criminal Division, United States Department of Justice, respectfully submits these consolidated motions *in limine* in advance of trial scheduled for June 20, 2023.

## I.    BACKGROUND

In the spring of 2021, defendant Tangtang Zhao ("defendant" or "Zhao") was employed as a pharmacist at various Walgreens pharmacies in Chicago. In this position, the defendant had access to COVID-19 ("COVID") vaccination cards issued by the Center for Disease Control ("CDC") to Walgreens for use in providing COVID vaccines to the general public. The cards were federal property, procured and paid for by the federal government as part of the national COVID vaccination initiative. The defendant stole COVID vaccination cards from his workplace, then sold them for his personal enrichment on eBay, an online marketplace.

The defendant, who operated under the eBay username "asianjackson,"[1] marketed the cards as authentic vaccination cards from the CDC.  For instance, in

---

[1] The government intends to admit eBay subscriber information and other identifying information at trial to prove the defendant was the owner and operator of this account.  As

describing his item for sale, he used descriptions in eBay listings such as "Authentic CDC Vaccination Record Card" and "Authentic Blank CDC Vaccination Record Card." In numerous instances when the defendant was asked by other eBay users whether the cards were genuine, he responded in the affirmative.

Between March 24, 2021, and April 13, 2021, the defendant created 37 separate listings advertising the sale of COVID vaccination cards.[2] In each instance, the listing noted the number of cards available for purchase; in some cases, only one card was available, while in other cases, there were as many as 50 cards listed. In total, through his 37 listings, the defendant made 658 cards available for purchase. The defendant initially set the price at $7.99 per card, but he increased the price six times over this three-week period, and ultimately sold cards for $10.99 each.

On numerous occasions, eBay took administrative action against the defendant's account because it did not comply with eBay's rules and policies. In particular, on April 1, 3, 7, and 13, 2021, eBay notified the defendant that his listings marketing COVID vaccination cards violated the eBay policy against the sale of government property; each notification also advised the defendant that eBay had removed the listing in question. On April 15, 2021, eBay imposed a 10-day selling restriction against the defendant's account, again notifying the defendant that a

---

such, for purposes of this pleading, the government uses "the defendant" and "asisanjackson" synonymously.

[2] This figure includes one instance in which the defendant marketed a "Clear Pouch For CDC Vaccination Record Card," as is discussed further *infra*.

listing from his account marketing COVID vaccination cards violated the policy against the sale of government property. Each notification was provided via email to tzhao07@yahoo.com, the email address associated with the defendant's eBay account.

Throughout the time frame at issue, the defendant routinely answered questions from, and otherwise chatted with, other eBay users about the COVID vaccination cards for sale. Generally, these were chats relating to the availability or authenticity of the cards, or about details related to a purchase (e.g., number of cards, shipping address, payment method, etc.). Exhibit A, appended to this motion, provides a sampling of the defendant's relevant chat communications.

On at least one occasion, the defendant took deceptive measures to conceal that he was selling COVID vaccination cards. In particular, on April 2, 2021—one day after he received his initial warning from eBay that he was not permitted to sell government property on the platform—the defendant created a listing advertising an item called "Clear Pouch For CDC Vaccination Record Card." However, based on chats between the defendant's eBay account and the accounts of potential buyers, the evidence shows that the defendant was not selling pouches for COVID vaccination cards, but rather, the vaccination cards themselves; he was merely trying to avoid scrutiny by using a different description. In one conversation with a buyer on April 2, 2021, the buyer asked, "Would that possibly include a vaccine card if I buy?" and the defendant replied, "Haha, yep. There is." The same day, another buyer asked, "Are you selling just the Ziploc bag or does the contents come with it? Thanks!"  to

3

which the defendant replied, "The stuff inside also, if u know what I'm talking about ;) 100% authentic."

One eBay user, a trained physician referred to herein as "Witness 1," became aware of the defendant's sales listing for a vaccination card "pouch." Suspecting that the description was a cover for the sale of an actual COVID vaccination card, Witness 1 ordered the item on April 2, 2021. On April 3, 2021, the seller of the item ("asianjackson") messaged Witness 1 to advise that eBay had removed the sales listing, but that the item would still ship. On April 9, 2021, Witness 1 received in the mail a blank COVID vaccination card. Concerned with the ease with which Witness 1 obtained the card, Witness 1 contacted a reporter from the Washington Post to share his experience.

Throughout the time frame in question, the defendant regularly and promptly responded to chats sent by other eBay users. However, on April 15, 2021, the defendant received the following message from another user:

> Hi Tangtang - I'm a Washington Post health reporter who's been writing about the Covid-19 vaccines. I see that you've sold more than 100 "authentic CDC vaccination record" cards through eBay. There's a good chance that I'll be writing about your sales on eBay in the next few days. Why did you decide to sell these cards? Did you get access to them while working at a pharmacy? Have you considered that selling these cards may complicate efforts to track who's actually been vaccinated? I think it's important that we talk before I write my story. If you'd prefer to communicate outside of eBay, please let me know when you're available.

4

The defendant did not respond to this message. After the message from the purported news reporter, other users continued to message the defendant about purchasing vaccination cards. The defendant did not respond to most of those users. To the users to which he did respond, the defendant sent the following message, or something similar: "Hello, This (sic) is the original owner of the account. My account was compromised and that person was using my account to selling (sic) these vaccination cards. If you received this product, please destroy them. Refund will be issued. I'm sorry about the trouble."

After the message from the purported news reporter on April 15, 2021, the defendant did not list or sell any COVID vaccination cards.

On August 12, 2021, a grand jury in the Northern District of Illinois returned an Indictment charging the defendant with 12 counts of theft of government property, in violation of 18 U.S.C. § 641. Each count relates to a separate eBay sale of COVID vaccination cards. The charges span the timeframe of March 25, 2021, to April 11, 2021, nearly the entirety of the three-week window within which the defendant sold the cards on eBay.

## II.    MOTIONS TO ADMIT EVIDENCE & ARGUMENT

### A.    MOTION TO ADMIT ALL SALES ACTIVITY RELATING TO COVID VACCINATION CARDS

First, the government seeks to admit evidence of all sales activity of the "asianjackson" eBay account relating to COVID vaccination cards. For purposes of this motion, "sales activity" includes (1) sales listings of vaccination cards, (2) sales

of vaccination cards, and (3) chat messages between the defendant and other users regarding vaccination cards, regardless of whether the specific listings, sales, or chats in question directly resulted in charged counts in the Indictment.[3] Evidence of sales activity is direct evidence of the charged offenses, not "other acts" evidence pursuant to Federal Rule of Evidence 404(b). However, even if this Court should determine that all pertinent sales activity constitutes "other acts evidence," the evidence is admissible pursuant to Rule 404(b)(2).

### 1. Records of Sales Activity are Direct Evidence of the Charged Conduct.

Complete eBay sales activity records relating to COVID vaccination cards, including sales listings, sales, and chat messages, are direct evidence of the offenses charged, and are not "other acts" evidence governed by Rule 404(b). "Rule 404(b) only applies to '[e]vidence of other crimes, wrongs, or acts . . ..' So, if the evidence is admitted as direct evidence of the charged offense, Rule 404(b) is not applicable." *United States v. Adams*, 628 F.3d 407, 414 (7th Cir. 2010) (citing *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009)). This reasoning also applies in cases where the offense charged is something other than a conspiracy or scheme. *See, e.g., United*

---

[3] The chat communications that came from the "asianjackson" account are admissible as statements of a party-opponent and are not hearsay under Fed. R. Evid. 801(d)(2)(A). Messages to the "asianjackson" account from other eBay users are also admissible because they are necessary to provide context to the defendant's chat messages. *See United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) ("The text messages [the defendant] *sent* are his own statements and as such are excluded from the definition of hearsay by Rule 801(d)(2)(A). The messages he *received* were admitted not for the truth of the matter asserted but instead to provide context for [the defendant's] own messages.") (emphasis in original).

*States v. Carson*, 870 F.3d 584, 599-600 (7th Cir. 2017); *United States v. McKibbins*, 656 F.3d 707, 711 (7th Cir. 2011).

In the sex-trafficking case *Carson*, for example, the Court upheld the admission of evidence of the defendant's uncharged conduct toward women, asserting that it provided context that was direct evidence of the crimes charged. 870 F.3d at 600. The defendant in *Carson* was charged with four counts of sex trafficking, in violation of 18 U.S.C. § 1591(a). *Id* at 592. The disputed evidence, which the Court ultimately allowed, involved women who were not victims of the crimes charged, but who were referenced throughout trial in various ways that arguably depicted the defendant as a sex trafficker: being driven to sexual appointments with paying customers arranged by the defendant; appearing in the defendant's advertisements for sexual services; appearing in provocative photographs the defendant used to obtain customers. *Id* at 598-99. In its holding, the Court acknowledged, "[t]he fact of the matter is that [the defendant] ran a sex-trafficking business with many women in his grasp. It would be near to impossible to describe any of the operations involving the named victims without mentioning the other women . . ." *Id*. at 600. The Court viewed some of the evidence not as other bad acts, "but rather part and parcel of the crime at issue." *Id*.

In the instant case, while the 12 counts in the Indictment relate to 12 individual sales, the defendant's complete eBay sales activity relating to COVID vaccination cards provides necessary context of the marketplace in which the

defendant marketed his product, as well as the availability of cards the defendant had at his disposal. In particular, between March 24 and April 13, 2021, the defendant, through his "asianjackson" eBay user account, created 36 separate sales listings making available for purchase a total of 608 COVID vaccination cards. In each listing, the item advertised for sale was described as "Blank CDC Vaccination Record Card," "Authentic Blank CDC Vaccination Record Card," or "Authentic CDC Vaccination Record Card." In addition, on April 2, 2021, the defendant created a sales listing for a "Clear Pouch For CDC Vaccination Record Card." This listing had 50 items available for purchase. As referenced *supra*, this listing was not actually for a clear pouch for a CDC vaccination card; rather, it was a listing for a COVID vaccination card itself. The "clear pouch" language was an attempt to conceal from eBay that the user was violating eBay policy by offering government-issued property for sale, one day after eBay removed a separate listing by the user for violating the same policy. Therefore, in total, the defendant created 37 separate sales listings for a total of 658 vaccination cards—all over the course of only 21 days. He sold the overwhelming majority of the items available in those listings.[4] He frequently created new sales listings immediately or shortly after the closure of prior sales

---

[4] Each of the defendant's sales listings noted that between one and 50 cards (or card "pouches") were available for purchase. Of the 37 sales listings, the defendant completed "full" sales (i.e., sold all the available items in a particular listing) 33 times. In the four instances he did not complete "full" sales, he sold the following numbers of available items: 43 out of 50; 47 out of 50; 47 out of 50; and 35 out of 50.

listings (*i.e.*, after all available items associated with a particular listing were depleted).

First, the complete vaccination card sales activity outlined above is directly relevant to the defendant's access to the cards charged in the Indictment. In particular, over the course of 21 days, the defendant systematically and regularly advertised COVID vaccination cards for sale. The fact that some of that advertising resulted in sales that were not charged does not negate the probative value of the same advertising that did result in charged counts. This evidence supports the notion that the defendant possessed the cards at issue in the Indictment because it demonstrates that the defendant had consistent possession of vaccination cards throughout the timeframe in question.

The relevance of the complete vaccination card sales activity to the charged counts is even more apparent when considered in the context of an example. In Count 1 of the Indictment, the 10 cards at issue relate to a sale the defendant made to buyer J.M. on March 25, 2021. The night before this sale, on March 24, 2021, at 7:49 p.m.,[5] the defendant created his first sales listing for a COVID vaccination card. That listing advertised a single item titled "Blank CDC Vaccination Record Card." That item sold at 8:03 p.m., and at 8:06 p.m., the defendant created another identical listing. The second item sold at 8:24 p.m., and at 8:26 p.m., the defendant created a

---

[5] All times referenced are in Central Standard Time.

third identical listing, which also led to a quick sale. In total, on March 24, 2021, the defendant created 10 separate sales listings, all of which led to sales that were completed on the same day. The next day (March 25, 2021 – the same date as the Count 1 sale), the defendant created a total of four sales listings for COVID vaccination cards, posting the first listing at 7:29 a.m.

Given the frequency with which the defendant advertised his possession of COVID vaccination cards on the day of and day before the sale that led to Count 1 of the Indictment, the sales activity around the Count 1 transaction provides necessary context and strong circumstantial evidence that the defendant possessed the stolen cards at issue in Count 1, even before advertising them. This evidence is "part and parcel of the crime at issue" in Count 1, *see Carson,* 870 F.3d at 600 (7th Cir. 2017), and is appropriate evidence for the jury to consider.[6]

The same reasoning applies to all counts in the Indictment. The entire time period in which the defendant created sales listings for, and completed sales of, COVID vaccination cards is brief, spanning only 21 days from March 24 to April 13,

---

[6] The general notion that the defendant possessed cards even when he was not actively advertising them is further corroborated by his chat messages. For instance, on April 5, 2021, he completed his final sale of a particular listing (*i.e.*, sold his 50th of 50 available cards) at 6:44 p.m. He did not create another sales listing until the following evening (April 6, 2021) at 5:55 p.m. However, at 1:23 a.m. on April 6, after a potential buyer messaged the defendant to ask if he had more cards available, the defendant responded, "Yes, I do have some more, how many would u like to have?" In a separate message chain, another potential buyer asked on April 8, 2021, "Do you have any more for sale?" to which the defendant responded, "i (sic) do have some more. I will list them either tonight or tomorrow night depends on how busy i (sic) am."

2021. The Indictment lists cards associated with 12 sales occurring between March 25 and April 11, 2021. Given the generally condensed time frame of the full sales activity, coupled with the fact that the sales resulting in specific charges spans almost that full time frame, the entirety of the sales activity is relevant to the charged conduct. As such, the Court should allow evidence of all sales activity at trial.

Further, possession of the stolen cards, as shown through the complete COVID vaccination card sales activity, is evidence of guilty knowledge on the part of the defendant. As the Seventh Circuit has long recognized, "an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." *United States v. Woody*, 55 F.3d 1257, 1264 (7th Cir. 1995), quoting *United States v. Clark*, 776 F.2d 623, 627 (7th Cir. 1984). The COVID vaccination cards at issue were federal property intended for legitimate use in the national COVID vaccine rollout. The defendant had no way to acquire the cards for his own personal use and to offer them for sale but by stealing the cards. As such, his possession of the stolen authentic CDC vaccination cards – inferred from his sales activity immediately surrounding all charged counts – is evidence a jury should consider regarding whether he committed the offense charged the Indictment.

Finally, the defendant's chat message history regarding COVID vaccination cards is even more probative of the charged offenses than the records of sales listings and sales. Not only do the defendant's chats demonstrate that he possessed the cards

(even when he did not advertise them) and that the cards were authentic, but it shows the state of mind of the defendant during several critical points in the timeline. As referenced previously, eBay took administrative action by removing the defendant's listings numerous times. Through his chats, the defendant acknowledged this to other users. After changing the item advertised to a vaccination card "pouch," he confirmed to numerous users through his chats that it was actually the card itself that was offered for sale. This shows explicitly deceptive behavior on the part of the defendant to hide his illegal behavior.

Similarly, the chat message from the purported news reporter and the immediate aftermath and change of behavior by the defendant is probative of the defendant's state of mind. Not only did the defendant's sales listings promptly cease, but the defendant claimed to other users that his account had been compromised. Finally, and critically, the defendant advised these users to "destroy" any vaccination card they ordered from his account previously. These chats show the guilty conscience of an individual attempting to separate himself from his past criminal conduct and hide any evidence of his wrongdoing. It is extremely probative of the charged offenses and should be allowed to be put before the jury.

### 2.  If Records of Sales Activity is "Other Acts" Evidence, There are Nonetheless Permitted Uses for Their Admission.

Even if the Court is persuaded that records of all sales activity constitutes "other acts" evidence,[7] the Federal Rules and Circuit precedent nonetheless allow for their admission. Rule 404(b) provides, in relevant part, as follows:

> (b) Crimes, Wrongs, or Other Acts.
>
> > (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > (2) Permitted Uses . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
> >
> > . . .

In *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014), the Seventh Circuit cast out the long-used four-part test for admission of 404(b) evidence, abrogating *United States v. Zapata*, 871 F.2d 616 (7th Cir. 989) and *United States v. Shackleford*, 738 F.2d 776 (7th Cir. 1984), and articulated the new admissibility standard for Rule 404(b) evidence:

> [T]he proponent of the evidence must . . . establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. *See* Fed.R.Evid. 401, 402, 404(b). Other-act evidence need not be excluded whenever a propensity

---

[7] Rule 404(b)(3) requires the government to provide notice to a defendant if it intends to introduce "other acts" evidence. While the government's primary position is that the evidence in question is not "other acts" evidence, if the Court determines it is, the government believes it has met its notice obligation through the filing of the instant motion.

inference can be drawn. But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case.

*Gomez*, 763 F.3d at 860.

Evidence of all COVID vaccination card sales activity is admissible under several bases permitted under Rule 404(b), including opportunity, intent, knowledge, and *modus operandi*. Each basis is discussed separately below.

### a.   Opportunity to Commit the Offense Charged

First, as discussed in detail in Section II.A.1., the sales activity in question demonstrates that the defendant possessed authentic COVID cards issued by the CDC, and by necessity had access to the cards and the opportunity to steal them. This is the same reasoning applied by the Seventh Circuit in *United States v. Washington*, 962 F.3d 901 (7th Cir. 2020). In *Washington*, the defendant was charged with possessing a firearm as a felon. *Id.* at 903. The Seventh Circuit upheld a district court's admission of photographs of a defendant holding a firearm approximately three months before the charged conduct, reasoning that the evidence showed that the defendant "had recent access to, and the ability to exercise control over," the firearm charged, and that the relevance of the photographs "did not depend on an

14

inference about [the defendant's] propensity to possess firearms in general or any other forbidden inference about his character." *Id*. at 906.[8]

Similarly, the defendant in this case is charged with theft of authentic CDC COVID vaccination cards. The complete sales activity of his eBay account shows he "had recent access to, and the ability to exercise control over," authentic CDC COVID vaccination cards. *See id*. Like the evidence in *Washington*, the Court should consider the cards marketed for sale on eBay as the same cards charged in the Indictment. First, as argued above, limiting admissible sales activity evidence only to the cards sold that directly resulted in charged counts is illogical because there is strong evidence that the defendant possessed cards, even when he was not actively advertising them through a sales listing. Further, there was only one version of COVID vaccination cards created by the CDC and issued for use in the public sphere. As such, these cards are "singular" in nature. The fact that the defendant specifically advertised the cards as authentic and issued by the CDC further supports that the cards referenced in the sales activity records should be considered the "same" evidence as the cards at issue in the Indictment.

---

[8] There was dispute at trial as to whether the firearm in the photographs was the same as the firearm charged. The government elicited evidence that it was the same firearm, while the defendant testified the firearm in the photos was a "prop gun." *Id*. at 905. The Court's reasoning was based on the assumption that the firearm in the photographs was the same firearm the defendant was charged with possessing. *Id*. at 906.

The condensed time frame of the sales activity and its temporal proximity to the sales charged in the Indictment weighs even more heavily in favor of admission. As noted, the disputed evidence in question in *Washington* was from three months before the charged conduct, which that Court characterized as "recent," and weighed in favor admissibility. *Id*. at 905. In the instant case, the entire timeline of relevant sales activity is 21 days. Each of the 12 sales that led to counts in the Indictment fall within that 21-day window. All of the evidence of sales activity is, at most, several days removed from a sale that led to a specific count. All of these factors support the admissibility of the evidence to show the defendant had the opportunity to commit the crime alleged.

### b.    Intent to Deprive

In addition to showing that the defendant had recent access to authentic COVID cards and the opportunity to steal them, the evidence in question also shows his intent to deprive the owner of its use and benefit. The defendant is charged with theft of government property, in violation of 18 U.S.C. § 641, and an element the government must prove at trial is that the defendant stole the cards "knowingly with the intent to deprive the owner of the use or benefit" of the cards. *See* Fed. Crim. Jury Instr. 7th Cir. (2022 ed.). That the defendant offered the cards for sale is probative of this element. The evidence is not just important for the mere fact that it shows the defendant possessed the cards. It goes a step further and establishes that the defendant sought to – and did – sell the cards, thereby depriving the actual owner of

16

their use and benefit. As such, the evidence is admissible under another express "permitted use" of Rule 404(b)(2).

### c. Knowledge of Government Property

Next, evidence of the complete eBay sales activity by the defendant of COVID vaccination cards is strong evidence of the defendant's knowledge that the cards were, in fact, property of the federal government. As noted previously, 36 of the 37 sales listings advertised the item for sale as "Blank CDC Vaccination Record Card," "Authentic Blank CDC Vaccination Record Card," or "Authentic CDC Vaccination Record Card." Each of these descriptions, as well as the accompanying chat messages where the defendant discusses the cards' authenticity, is an acknowledgment by the seller that the item in question is federal property. This is important evidence for a jury in a trial for theft of government property, and a reasonable basis for the admission of the records.

### d. *Modus Operandi*

Finally, complete evidence of the defendant's eBay sales activity regarding COVID vaccination cards should be admitted as *modus operandi* evidence. The Seventh Circuit has allowed such evidence when it "bear[s] a singularly strong resemblance to the pattern of the offense charged with the similarities between the two crimes sufficiently idiosyncratic to permit an inference of pattern for purposes of proof." *United States v. Thomas*, 986 F.3d 723, 731 (7th Cir. 2021) citing *United States v. Thomas*, 321 F.3d 627, 634-35 (7th Cir. 2003) (internal quotation marks omitted).

17

The Court explained that, for other acts evidence to be admitted under this theory, the facts "must be sufficiently unique that the predominate inference is that it is unlikely that the defendant would be involved in two or more situations with such similar circumstances without having anything to do with them." *Id.* Further, "[d]istinctiveness is key to whether something is proper *modus operandi* evidence." *Id.*

The evidence at issue in this motion is quite distinctive. It relates to the ongoing advertising and sale of a singular item which is not available to the general public. The item was advertised and sold in the same forum – and internet marketplace – through the same specific company – eBay – and by the same account – asianjackson – as the items charged in the Indictment. The price of the item advertised and sold in the other acts was the same as, or very close to, the price of the items charged in the Indictment. In short, if the records of sales activity of the items not charged in the Indictment are, in fact, "other acts," evidence, they are so unique and similar to the conduct charged that they are "more probative of a Rule 404(b)(2) element and less likely to provoke a propensity inference." *Id.* at 732. The evidence is proper *modus operandi* evidence.

### 3.    The Evidence is Not Barred by Rule 403

Lastly, the evidence in question is not barred by Rule 403, as its probative value is not substantially outweighed by a danger of unfair prejudice. Whether or not the Court deems the evidence direct evidence of the charged offense or "other acts"

18

evidence, it still must undergo a Rule 403 analysis. *See Gomez*, 763 F.3d at 860. And "[w]hile 'other-acts' evidence often raises special concerns about unfair prejudice, that alone is not sufficient to prohibit admission." *United States v. Tinsley*, 62 F.4th 376, 383 (7th Cir. 2023) (citing *United States v. Brooks*, 125 F.3d 484, 499-500 (7th Cir. 1997).[9] Indeed, relevant evidence is inherently prejudicial. *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir. 1985). However,

> [t]hat the evidence is damaging to the defendant's case is not a ground for excluding it under Rule 403. It is only when the probative value of the evidence is substantially outweighed by the likelihood that the evidence will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented on the crime charged, that Rule 403 requires its exclusion.

*Id*. "In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." *United States v. Denberg*, 212 F.3d 987, 993 (7th Cir. 2000).

The complete sales activity evidence at issue in this motion is not unfairly prejudicial. First, it is limited in scope. The 21 days of sales activity covers almost the exact span of time between the first and last sale that led to specific charges in the Indictment. Further, the nature of the conduct in the evidence in question is the same

---

[9] *Brooks*, the case relied upon by the Seventh Circuit in 2023, upheld the admission of evidence of defendants' drug use to establish their motive to commit bank robbery, where drug use or possession was not charged. 125 F.3d at 500.

as the conduct leading to the defendant's charges. In other words, the jury will not be exposed to a different type of criminal behavior than that for which the defendant is already charged, as was the case in *Brooks*. Given this, the risk that the jury will decide the case on an improper basis is low. It does not come close to outweighing the probative value of the evidence, which is discussed throughout this motion, let alone "substantially outweigh" it, as required to bar the evidence pursuant to Rule 403.

For the reasons set forth above, evidence of all sales activity of COVID vaccination cards from the defendant's eBay account should be admitted.

### B. MOTION TO ADMIT TESTIMONY OF WITNESS 1 REGARDING THE PURCHASE OF A PURPORTED VACCINATION CARD POUCH

Next, the government seeks to call Witness 1 to elicit evidence testimony regarding Witness 1's purchase of an item called "Clear Pouch For CDC Vaccination Record Card" from the eBay user "asianjackson." Because the testimony Witness 1 would provide mirrors the records of eBay sales activity that is subject of the motion in Section II.A., all of the arguments set forth in that motion are adopted herein. In particular, testimony of the purchase from the defendant's account of a COVID vaccination card, disguised as a COVID card "pouch," is direct evidence of the charged offense because it shows the defendant had access to and possessed authentic COVID vaccination cards. In the event the Court believes this would constitute "other acts" evidence, the testimony is still admissible, as it shows the defendant's opportunity to commit the offense, his intent to deprive the owner of the use and benefit of the item, his knowledge that the item constituted government property, and the defendant's

20

*modus operandi*. Finally, the testimony of this witness would not constitute unfairly prejudicial evidence subject to exclusion under Rule 403.

Testimony from Witness 1, however, is even more probative than records of the other sales activity. Although the purchase of the purported pouch did not result is a specific charge in the Indictment, this evidence shows specific deceptive measures the defendant took in an attempt to conceal his criminal conduct. "It is well-settled in this circuit that evidence of flight and concealment is admissible to show consciousness of guilt, as well as guilt itself." *United States v. Zabic*, 745 F.2d 464, 471 (1984) (citing *United States v. Solomon*, 688 F.2d 1171, 1176 (7th Cir. 1982); *United States v. Jackson*, 572 F.2d 636, 639 (7th Cir. 1978)). The defendant's false advertisement of vaccination card "pouches," when in fact the items he was selling were the vaccination cards themselves, shows his consciousness of guilt, and should be allowed on that basis.

Further, testimony from Witness 1 is not redundant of other sales activity evidence regarding the purported pouches for sale by the defendant's eBay account. While the defendant's chat merely messages suggest that the item for sale in that particular listing was actually a blank COVID vaccination card, testimony from this witness confirms it. The witness would testify about the specific sales listing, the purchase process, and finally, the item that was ultimately delivered following the purchase: a blank COVID vaccination card. Testimony from Witness 1 is significantly

21

more probative than the sales activity records about the purported vaccination card pouch and should be admitted.

Next, Witness 1 can provide the link in the sequential chain that ultimately resulted in the defendant stopping the marketing and sale of COVID vaccination cards through eBay. In this regard, Witness 1 would testify that, following his purchase of a card through eBay, he notified a Washington Post reporter. Other evidence will show that the defendant received a chat message days later from an individual claiming to be a Washington Post reporter, at which time the defendant's eBay activity changed dramatically. The defendant immediately stopped selling COVID vaccination cards, claimed his account had been hacked, and told other users to destroy any cards they may have received from him in the past. This is critical evidence, and it is put in proper context with the testimony of Witness 1.

Finally, even if the Court believes testimony from this witness constitutes "other acts" evidence, there is an additional basis under which the evidence may still be allowed. Specifically, the Seventh Circuit has held that evidence demonstrating consciousness of guilt may be properly admitted under Rule 404(b). *See United States v. Robinson*, 161 F.3d 463, 467 (7th Cir. 1998), *United States v. Acevedo*, 28 F.3d 686, 688 (7th Cir. 1994); *see also United States v. Bartelho*, 129 F.3d 663, 677 (1st Cir. 1997). Because this witness would provide evidence and testimony that clearly go to the defendant's consciousness of guilt, such evidence and testimony may still be allowed, even if it is not direct evidence of the crime charged.

22

For the reasons set forth above, Witness 1 would offer relevant and probative testimony to the crimes charged in the Indictment and should be allowed to testify.

### III.   MOTION TO EXCLUDE EVIDENCE RELATING TO JURY NULLIFICATION

Finally, the government respectfully requests that the Court exclude evidence and argument that do not go to the facts of this case, but instead are intended to inflame the passions of jurors on subjects only tangentially related to the alleged criminal conduct at issue. Specifically, the government seeks to exclude commentary by all witnesses and counsel on topics such as the efficacy of vaccines, the utility of vaccine mandates, and the merits of COVID responses at the local, state, and federal levels. Such evidence and argument are not relevant to the charged conduct and would serve only to increase the risk of jury nullification.[10]

First, the topics referenced above are not relevant. "Evidence is relevant if it is both probative (having any tendency to make a fact more or less probable than it would be without the evidence) and material (the fact must be of consequence in determining the action)." *United States v. Chanu*, 40 F.4th 528, 544 (7th Cir. 2022)

---

[10] The government does expect to elicit certain fact evidence related to the national COVID response to provide the jury proper context of the allegations at issue. *See* Dkt. 1, par. 1(e)-1(j). Specifically, one or more witnesses will discuss the COVID vaccine development and subsequent national rollout and distribution of the vaccine and related materials, including vaccination cards. Because the defendant is charged with the theft of those cards, limited background information is necessary foundation for jurors to reach a just verdict. However, the government does not intend to admit evidence or make argument relating vaccine effectiveness, the virtues of taking the vaccine, or any other topics it seeks to preclude in this motion.

(quotation marks omitted). Here, the items at issue are neither probative nor material. Facts, opinions, and argument that do not speak to the alleged conduct of the defendant, but rather to general sentiments on COVID and vaccinations have no bearing whatsoever on whether the defendant stole government property. There is no fact of consequence made more or less probable with the admissibility of this evidence. That applies to individual witnesses and their personal positions on these issues, as well as positions of the public in general, as represented through witness testimony or argument by counsel.

Even more, evidence or argument along these lines would only serve to inflame the passions of the jury and increase the risk of jury nullification. "Jury nullification occurs when a jury disregards the law and the judge's instructions as to the law and acquits a criminal defendant who is guilty." *United States v. Rainone*, 2013 WL 2890004, at *1 (N.D. Ill. Jan. 31, 2013). The Seventh Circuit recognizes that "jury nullification is 'a legitimate concern of prosecutors because acquittals cannot be appealed.'" *United States v. Mandell*, 2014 WL 287520, at *2 (N.D. Ill. Jan. 27, 2014) citing *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996); *see also United States v. Rash*, 840 F.3d 462 (7th Cir. 2016) ("Jury nullification is a material risk when…the jury receives information that invites it to ignore the law"). The Seventh Circuit states that the Court "may preclude defense attorneys from any attempts to present evidence or argument of nullification. *Rainone*, 2013 WL 2890004, at *1 citing *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996).

24

Because the defendant is charged with the theft of COVID vaccination cards, this trial will involve topics that are regularly and fervently debated in the public sphere through news outlets, social media, protests and rallies, and the chambers of local, state, and federal governments. While justice is never served when criminal trial proceedings are infiltrated by irrelevant evidence intended to provoke an emotional response from the jury, risk of injustice is particularly high here, where the subject matter is already contentious. Both the public and the defendant are best served if the Court holds a hard line on allowing evidence and argument that increase the risk of jury nullification.

In addition to the subject areas noted above, the government also asks that the Court exclude other evidence that could lead to jury nullification. For example, the government seeks to preclude any reference by the defendant to any of the following: impact on the defendant's family members from the prosecution; potential penalties the defendant could face if convicted; and irrelevant references to the defendant's family. Each of these are all examples of inappropriate and unfairly prejudicial evidence aimed at jury nullification designed to encourage a verdict without regard to the law. The Court should preclude the defendants from presenting this type of evidence—whether on direct or cross-examination—and making arguments on these topics.

<p align="center">*      *      *</p>

<p align="center">25</p>

For the reasons stated herein, the government respectfully requests that the Court grant its motions *in limine*.

<div style="margin-left: 40%;">Respectfully submitted,</div>

Dated: May 31, 2023        GLENN S. LEON
<div style="margin-left: 40%;">
Chief, Fraud Section<br>
Criminal Division, U.S. Department of Justice
</div>

<div style="margin-left: 40%;">
By:       /s Victor B. Yanz<br>
          Victor B. Yanz<br>
          Claire T. Sobczak<br>
          Trial Attorneys<br>
          U.S. Department of Justice<br>
          Criminal Division, Fraud Section<br>
          219 South Dearborn St., Rm. 500<br>
          Chicago, Illinois 60604<br>
          Email: victor.yanz2@usdoj.gov<br>
          (202) 957-2993
</div>