UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 21 CR 505 |
| v. | |
| TANGTANG ZHAO | Judge Manish S. Shah |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTIONS *IN LIMINE***

The United States of America, by GLENN S. LEON, Chief of the Fraud Section, Criminal Division, United States Department of Justice, respectfully submits this response to the defendant's motions *in limine*. This filing is responsive to the defendant's motions *in limine*, supplemental motions *in limine*, and motions *in limine* to bar opinion testimony. *See* Dkt. 39; Dkt. 43; Dkt. 44.

In its own omnibus motions *in limine*, the government laid out a detailed factual background to provide the Court proper context for the motions. *See* Dkt. 40, Section I. The government adopts and incorporates that background into this response and provides the Court additional relevant facts below.

**I.  ADDITIONAL FACTUAL BACKGROUND**

At trial, the government expects to elicit testimony from S.P., the eBay user referenced in Count 9 of the Indictment who was responsible for purchasing ten Covid-19 vaccination record cards ("Covid cards") from the defendant. Among other topics, the government anticipates that S.P will testify to the unique nature in which he received the Covid cards he purchased through eBay. Specifically, following his purchase, he received a greeting card in the mail that held the ten Covid cards and

had nothing written inside. S.P. will also state that the UPC label on the back of the greeting card had been cut out and removed.

The government also seeks to elicit testimony from Witness 1 about his purchase from the defendant that resembles S.P.'s purchase.[1] Specifically, after Witness 1 ordered a Covid card from the defendant's eBay account, Witness 1 received a greeting card in the mail, and inside was the single Covid card that Witness 1 purchased. Similar to S.P.'s testimony, Witness 1 will likely testify that nothing was written on Witness 1's greeting card, and the UPC label on the back of the greeting card had been removed. The government intends to admit the greeting card itself or a photograph of it into evidence.

After Witness 1 received the Covid card he purchased on eBay in the mail on or about April 9, 2021, he met with a health reporter from the Washington Post and recounted his experience to that reporter. As noted in the government's motion, on April 15, 2021, the defendant's eBay account received a message from an individual representing himself as a Washington Post health reporter advising that a story would be published in the near future about the sale of Covid cards online. *See* Dkt. 40 at 4. This message was sent at 5:55 a.m. Central Standard Time (CST).

---

[1] Witness 1, the subject of one of the government's motions *in limine* (*see* Dkt. 40, Section II.B.) is the same individual whose testimony the defendant seeks to bar in his motion. *See* Dkt. 39, Section II.

Finally, during the 21-day period in which the defendant sold Covid cards through eBay, his sales listings were frequent and resulted in 658 total listings and 630 total sales. He often created multiple new sales listings in a single day, and on only six of the 21 days between his first and last sales offerings did he not list Covid cards for sale. An overview of the defendant's sales-listing activity for each day of the relevant time period is below:

| Date (CDT) | Total # of Sales Listings | Total # of Covid Cards Listed for Sale | Title of Sales Listings |
|---|---|---|---|
| 3/24/2021 | 10 | 14 | Blank CDC Vaccination Record Card |
| 3/25/2021 | 4 | 60 | Authentic Blank CDC Vaccination Record Card |
| 3/26/2021 | 1 | 25 | Authentic Blank CDC Vaccination Record Card |
| 3/27/2021 | 1 | 50 | Authentic Blank CDC Vaccination Record Card |
| 3/28/2021 | 4 | 12 | Authentic Blank CDC Vaccination Record Card |
| 3/29/2021 | 3 | 16 | Authentic Blank CDC Vaccination Record Card |
| 3/30/2021 | 2 | 58 | Authentic Blank CDC Vaccination Record Card (shipping details in description) |
| 3/31/2021 | 1 | 50 | Authentic Blank CDC Vaccination Record Card (shipping details in description) |
| 4/1/2021 | 3 | 72 | Authentic Blank CDC Vaccination Record Card (shipping details in description) |
| 4/2/2021 | 1 | 50 | Clear Pouch For CDC Vaccination Record Card |
| 4/3/2021 | 0 | 0 | n/a |
| 4/4/2021 | 0 | 0 | n/a |
| 4/5/2021 | 1 | 50 | Authentic CDC Vaccination Record Card |
| 4/6/2021 | 1 | 50 | Authentic CDC Vaccination Record Card |
| 4/7/2021 | 1 | 50 | Authentic CDC Vaccination Record Card |
| 4/8/2021 | 0 | 0 | n/a |
| 4/9/2021 | 0 | 0 | n/a |
| 4/10/2021 | 0 | 0 | n/a |
| 4/11/2021 | 1 | 50 | Authentic CDC Vaccination Record Card |
| 4/12/2021 | 0 | 0 | n/a |

| | | | |
|---|---|---|---|
| 4/13/2021 | 2 | 51 | Authentic CDC Vaccination Record Card |
| 4/14/2021 | 0 | 0 | n/a |
| 4/15/2021 | 0 | 0 | n/a |
| 4/16/2021 | 0 | 0 | n/a |
| 4/17/2021 | 0 | 0 | n/a |
| | | 658 | |

As noted in the government's motion, eBay took administrative action against the defendant's account on five occasions. *See* Dkt. 40 at 2. In this regard, eBay notified the defendant that certain sales listings violated the eBay policy against the sale of government items, and it removed the listings in question. An overview of eBay's notices to the defendant appears in the table below.

| Message Date | Message Time (CST) | Message Subject |
|---|---|---|
| 4/1/2021 | 2:50 p.m. | Your listing was removed: Government items policy |
| 4/2/2021 | 11:31 p.m. | Your listing isn't following policy: Government items policy |
| 4/7/2021 | 4:03 a.m. | Your listing isn't following policy: Government items policy |
| 4/13/2021 | 3:58 p.m. | Your listing was removed: Government items policy |
| 4/15/2021 | 10:35 a.m. | Your account has been restricted: Government items policy |

The case was investigated by the Federal Bureau of Investigation ("FBI") and the Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"). Although an FBI Special Agent assigned to the case testified in front

of the Grand Jury prior to indictment, the government does not intend to call this agent as a witness at trial.

Finally, On June 8, 2023, the government spoke with several employees from InnerWorkings, the company that printed Covid cards on behalf of the CDC. Shortly after this meeting, the government notified defense counsel of its intent to call a witness from InnerWorkings ("Witness 2") to testify about the process for printing Covid cards and the CDC's specifications for the cards, such as the dimensions, the cardstock, and the ink used for the cards. The government also notified defense counsel that it intended to have Witness 2 authenticate the Covid cards that it will seek to introduce into evidence, including the cards purchased by Witness 1 and S.P. In this regard, the government will seek testimony from Witness 2 that the Covid cards purchased by Witness 1, S.P., and buyer R.S.[2] all possess characteristics that are consistent with the characteristics of CDC-issued Covid cards. On June 9, 2023, the government produced a report of interview of its discussion with Witness 2 and another InnerWorkings employee about the Covid card printing process and the identifying characteristics of these cards.

On June 12, 2023, the government provided notice to the defendant in an abundance of caution regarding the scope of Witness 2's testimony pursuant to Federal Rules of Criminal Procedure 16(a)(1)(G) and Federal Rules of Evidence 702,

---

[2] R.S. is the buyer named in Count 11 of the Indictment.

703, and 705. The disclosure stated that the government will seek to have Witness 2 authenticate the vaccination cards by examining the physical cards admitted into evidence to determine whether the cardstock, ink, artwork on the card, and dimensions of the cards are consistent with the specifications for Covid cards that InnerWorkings printed on behalf of the CDC. The disclosure did not state that the government would seek to elicit testimony from Witness 2 regarding whether the authenticated Covid cards are government property.

## II. TO COMPEL THE GOVERNMENT TO TURN OVER GRAND JURY TRANSCRIPTS OF A NON-TESTIFYING WITNESS

The defendant's first request, that the government produce the Grand Jury transcript of a witness it does not intend to call as a witness at trial, has no basis in law. Indeed, the defendant has cited to no legal authority in support of his request.

After acknowledging that the government does not intend to call this witness at trial, the defendant argues, "that decision does not preclude Mr. Zhao from calling [the agent] to testify. In order to determine whether to call [the agent], Mr. Zhao must be able to review her testimony before the Grand Jury to be able to assess her credibility and other issues that may arise if called to testify." Dkt. 39 at 1. The production of witness statements is governed by Federal Rule of Criminal Procedure 26.2, which incorporates the Jencks Act, 18 U.S.C. § 3500. Both authorities are clear that the government is only obligated to turn over prior statements of its own witnesses. *See* Fed.R.Crim.P. 26.2(a) (requiring production to "a party who did not call the witness"); *see also* 18 U.S.C. § 3500(b) (requiring production of a prior

6

statement "after a witness called by the United States has testified on direct examination"). Moreover, the government is not obligated under *Jencks* or *Giglio* to disclose impeachment evidence related to non-witnesses. *United States v. Coggs*, 752 F. Supp. 848, 849 (N.D. Ill. 1990) (finding that "[r]equiring that the government provide impeachment evidence for non-witnesses will not further the interest sought to be served by *Giglio*—allowing for a meaningful determination of witness credibility.) Given that the defendant is seeking Grand Jury testimony of a non-testifying agent, the defendant has no right to this agent's testimony under Fed.R.Crim.P. 26.2 or the Jencks Act.

Next, the defendant implies the transcripts may include *Brady* material. *See* Dkt. 39 at 1 ("it is believed to contain testimony that would negate the government's claim that the vaccine cards were government property as alleged in the Indictment.") The defendant's assertion is wholly speculative. The government is aware of its obligations under *Brady v. Maryland,* 373 U.S. 83, 87 (1963), has reviewed the transcript, and does not believe the transcript contains information that could be reasonably be construed as *Brady* material. However, in an abundance of caution, the government is prepared to provide a copy of the transcript for the Court's review in camera at the final pretrial conference to assess whether potential *Brady* material exists in the transcript that would trigger the government's disclosure obligations.

Although the government does not believe that the requested Grand Jury transcript contains *Jencks*, *Giglio*, or *Brady* material, the government is prepared to

7

produce this transcript in camera for the Court's review to ensure that it is in full compliance with its disclosure obligations.

## III. DEFENDANT'S MOTION TO BAR THE TESTIMONY OF WITNESS 1

The Court should reject the defendant's request to bar the testimony of Witness 1.[3] The evidence is not irrelevant or unnecessarily cumulative, as argued by the Defendant. *See* Dkt. 39 at 2. Additionally, while the evidence may be prejudicial to the defendant – like all relevant evidence – it is not *unfairly* prejudicial, which is the legal standard the Court must apply.

First, the testimony of Witness 1 is relevant. "Evidence is relevant if it has *any* tendency to make a fact of consequence more or less probable than it would be without the evidence. The word 'any' signals that evidence is relevant even if it only slightly or marginally alters the likelihood of a consequential fact." *United States v. Leonard-Allen*, 739 F.3d 948, 956 (7th Cir. 2013) (emphasis in original). *See also United States v. Causey*, 748 F.3d 310, 316 (7th Cir. 2014) ("To be relevant, evidence need not conclusively decide the ultimate issue in the case, nor make the proposition appear more probable, but it must in some degree advance the inquiry." The Supreme Court has stated that there is a "low threshold" for establishing that evidence is relevant, *Tennard v. Dretke*, 542 U.S. 274, 285 (2004), and the Seventh Circuit has asserted that "[t]he Federal Rules of Evidence do not limit the government to the 'most'

---

[3] In addition to the argument set forth in this Response, the government adopts and incorporates its argument as to the admissibility of Witness 1's testimony from its own motion (*see* Dkt. 40, Section II.B.).

probative evidence; all relevant evidence is admissible and the Rules define relevance broadly." *United States v. McKibbins*, 656 F.3d 707, 711 (7th Cir. 2011).

The relevance of Witness 1's testimony is plain. First, while his specific card purchase is not charged in the Indictment, the testimony would provide evidence of the defendant's state of mind that is relevant to all charged counts. In particular, the defendant's advertising of a Covid card "pouch," which Witness 1 would testify resulted in the sale of an actual Covid card, demonstrates the defendant's attempt to conceal the same illegal conduct that is charged in Counts 1 through 12 of the Indictment. "It is well-settled in this circuit that evidence of . . . concealment is admissible to show consciousness of guilt, as well as guilt itself." *United States v. Zabic*, 745 F.2d 464, 471 (1984) (citing *United States v. Solomon*, 688 F.2d 1171, 1176 (7th Cir. 1982); *United States v. Jackson*, 572 F.2d 636, 639 (7th Cir. 1978)).

In addition to demonstrating evidence of the defendant's consciousness of guilt that applies to all counts in the Indictment, Witness 1's testimony would also establish the pattern by which he sent the cards to buyers. In this regard, Witness 1 will testify that he received his Covid card purchase in the mail, inside a blank greeting card with the card's UPC label missing. This mirrors how S.P. received the 10 cards at issue in Count 9. This evidence of the defendant's shipping patterns is relevant to demonstrating his lack of mistake in carrying out the illegal sales.

Further, the proposed testimony of Witness 1 is also not unnecessarily cumulative. "Evidence is 'cumulative' when it adds very little to the probative force

9

of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial . . ..” *United States v. Gardner*, 211 F.3d 1049, 1055 (7th Cir. 2000) (*citing United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir.1996). In this case, the testimony of Witness 1 is uniquely probative. It is the only testimony the government would offer that affirmatively shows that the Covid card "pouches" the defendant marketed for sale were indeed the cards themselves. Testimony from Witness 1 would solidify for the jury what the defendant's chat messages merely suggest—that despite the representations in the listing, the item for sale did not result in receipt of a pouch, but rather, a Covid card.

Next, the defendant claims that Witness 1's testimony would be improperly prejudicial. He asserts that "if the jury learns that [Witness 1] is a medical doctor that bought a vaccination card not because he wanted to have one, but because he wanted to expose the person that was selling it, his testimony will be extremely prejudicial." Dkt. 39 at 2. The defendant fails to explain, however, why this is the case. Witness 1's testimony will demonstrate that the defendant sold Covid cards through eBay, that the defendant attempted to conceal that fact by advertising Covid cards as something else, and the specific nature in which the defendant packaged and shipped the Covid card; *i.e.*, in a blank greeting card with the card's UPC label removed. The motivation as to *why* Witness 1 purchased a Covid card through eBay provides necessary context to his testimony and the actions he took to acquire a card,

10

but it does not prejudice the defendant any more than if Witness 1 purchased the card for personal use. Indeed, relevant evidence is inherently prejudicial. *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir. 1985). The question for the Court is whether that prejudice is unfair and substantially outweighs the probative value of the evidence such that the evidence should be barred under Rule 403. The defendant does not make this argument, nor would such an argument succeed. Mere prejudice is no legal basis to bar testimony, and the Court should reject this argument.

Finally, the defendant argues that, should Witness 1 be allowed to testify, he not be permitted to (1) state that he is a trained physician; and (2) testify to his motivation for purchasing the Covid card; (3) discuss the investigation he conducted regarding the identity of the Covid card seller; and (4) reference his communications with the news reporter. Dkt. 39 at 2. While the government does not intend to elicit testimony regarding Witness 1's investigation into the identity of "asianjackson,"[4] the Court should reject the remainder of the defendant's request.

There is no legal basis to exclude the background and medical training of Witness 1. Not only does that information provide necessary context for Witness 1's interest in the availability of Covid cards through unsanctioned channels such as eBay, but to the extent that information demonstrates Witness 1's "intelligence," this is a factor the Court will expressly instruct the jury it can consider in determining

---

[4] The government reserves the right to seek to admit this evidence should the defendant open the door or make the evidence relevant for witness rehabilitation purposes.

11

witness credibility. *See* Pattern Jury Instruction 3.01, 7th Cir. (2022 Ed.). If the defendant believes Witness 1's background creates a bias against the defendant, he can explore that in cross-examination. It does not provide a basis, however, to exclude the evidence altogether.

Defendant's request to bar Witness 1's motivation for purchasing a Covid is similarly baseless. While it is true that Witness 1 purchased his Covid card from the defendant without any intent to use it, but rather to assess the card's availability through an unofficial market, the defendant fails to explain how this motivation creates a prejudice against him. Further, if this testimony is excluded, the jury is left with no other conclusion than Witness 1 purchased the card to use it personally in a dishonest manner. Such a conclusion would be categorically false and would prejudice the government.

Lastly, the defendant asks that Witness 1 be barred from referencing his communication with a news reporter. For the reasons set forth below in Section IV., the response to the defendant's motion to bar testimony and evidence about the Washington Post, this request should be similarly denied.

In sum, the testimony of Witness 1 is highly relevant, and any prejudice that may result is not unfair. Further, any unfair prejudice, to the extent it exists, does not substantially outweigh the probative value, which is required for exclusion under Rule 403. As such, this motion should be denied.

## IV. DEFENDANT'S MOTION TO BAR TESTIMONY AND EVIDENCE ABOUT THE WASHINGTON POST

The defendant's next request, that the Court bar any testimony and evidence about the Washington Post, also fails. Evidence relating to the Washington Post is highly relevant to the defendant's conduct and his consciousness of guilt. On April 15, 2021, at 5:55 a.m. CST, the defendant received a chat message from an individual representing himself as a Washington Post health reporter stating that the newspaper would be publishing a story about the defendant's sale of Covid cards through eBay. Immediately after this message was sent, the defendant's behavior changed dramatically. After spending the three weeks prior to the message creating 37 sales listings for 658 Covid cards available for purchase through his eBay account, the defendant ceased all Covid card sales following contact from the reporter.[5] Additionally, he attempted to conceal his past criminal conduct by claiming to other users that his account had been hacked, and he attempted to cause evidence of his criminal conduct to be destroyed by telling other users to destroy any cards they may have purchased from him in the past. Testimony from Witness 1 about his contact with a Washington Post reporter would provide the sequential link in the evidentiary chain that led to this critical evidence. Contrary to the defendant's assertion, the government does not intend to suggest or argue that the Washington Post was

---

[5] Also on April 15, 2021, eBay also suspended the defendant's account for 10 days for repeated policy violations. However, eBay did not notify the defendant of this suspension until 10:34 a.m. CST. Additionally, following the 10-day suspension, the defendant still did not create any sales listings for COVID cards.

"appalled by Mr. Zhao's action." Dkt. 43 at 2. However, it was interested enough in the defendant's conduct to contact him, and the defendant's behavior following that contact provides unique insight into the defendant's state of mind during the crimes alleged in the Indictment.

If the Court determines that the government shall not put forth evidence about the Washington Post, as argued by the defendant, the government requests that a redacted record of the relevant chat message be allowed. The redacted record could exclude the "Washington Post" name, while still showing the relevant communication from a purported health reporter that led to the defendant's change in conduct. This communication is critically important for the reasons set forth above and should be allowed.

## V. DEFENDANT'S MOTION TO BAR EVIDENCE OF EBAY'S INTERNAL POLICIES

The defendant's request to bar evidence of eBay's internal policies should similarly be rejected. The defendant argues that the evidence "is not relevant to the issues at hand nor will the evidence be probative to any fact or element of the alleged crimes of Mr. Zhao." Dkt. 43 at 2. To the contrary, the timeline of the administrative warnings the defendant received following policy violations, and the defendant's subsequent change in behavior following each of warnings, is probative of knowledge and demonstrates the defendant's consciousness of guilt.

The defendant received five separate notifications advising that he violated eBay policy by selling government items, and after each notice, the defendant's behavior materially changed. In particular:

- Between March 24 and April 1, 2021, the defendant created 29 sales listings advertising a "Blank CDC Vaccination Record Card" or an "Authentic Blank CDC Vaccination Record Card." eBay sent its first policy violation warning notification on April 1, 2021, and the defendant's very next sales listing, on April 2, 2021, was for a "Clear Pouch For CDC Vaccination Record Card." As discussed throughout the government's motion, this was merely a way to conceal that he was continuing to sell the Covid cards. *See* Dkt. 40 at 3-4, 12, 20-21.

- The defendant received his second eBay warning on April 2 at 11:31 p.m. On April 3 and April 4, the defendant posted no sales listings for Covid cards; these were the first days since he started selling Covid cards on March 24, 2021, in which he did not create any Covid card sales listings. He resumed selling Covid cards on April 5 and 6, 2021.

- The defendant received his third eBay warning on April 7, 2021. Again, the defendant took an immediate hiatus from selling Covid cards; this time, the break in sales listings was for three days. He resumed sales again on April 11, 2021.

- On April 13, the defendant received his fourth eBay warning. The defendant again stopped creating sales listings for Covid cards. That break lasted until eBay imposed a 10-day suspension on the account on April 15, 2021.

15

- Following the 10-day account suspension imposed on April 15, 2021, the defendant did not return to selling Covid cards through his eBay account.

In summary, each time the defendant was notified that he was violating the eBay policy of selling government items, he either stopped doing so, or modified the manner in which he sold the cards to conceal his conduct. Given the similarities between the eBay policy the defendant violated (selling government property) and the criminal offense with which he is charged (stealing/selling government property), the defendant's immediate response to the warnings from eBay are highly probative of whether he committed the charged offenses. The defendant's speculative assertion that "[t]he jury would immediately assume that Mr. Zhao must have stolen government property if eBay made [the] determination" that he sold government property is not grounds to bar the evidence. The defendant will have the opportunity to cross-examine a witness from eBay to challenge the warnings that eBay communicated and argue whether to the jury whether eBay is equipped to decide that the items in question constituted actual government property. The eBay policies are highly relevant, and any concerns the defendant raises go to their weight at trial, not their admissibility.

## VI. DEFENDANT'S MOTION TO BAR ANY TESTIMONY AND EVIDENCE RELATING TO WALGREENS INTERNAL INVESTIGATION AND DETERMINATION RELATING TO MR. ZHAO'S EMPLOYMENT

The defendant's final request from its first supplemental motion – that the Court bar testimony and evidence relating to the internal Walgreens investigation and any action Walgreens took regarding the defendant's employment – is likely moot. The government has no intention of seeking the admission of evidence of this sort in its case-in-chief. However, should the defendant open the door to this evidence, or should it become relevant in some other way, the government reserves the right to seek its admission at a later time.

## VII. DEFENDANT'S MOTION TO BAR OPINION TESTIMONY

The defendant filed an additional supplemental motion *in limine* on June 9, 2023, in which he seeks to bar the government from introducing opinion testimony. Dkt. 44. Because the government does not seek to introduce opinion testimony of the nature the defendant describes in his supplemental motion, the Court should deny the defendant's final request.

The defendant argues that the government should be barred from eliciting lay opinion testimony "from certain witnesses asserting that they believed the Covid-19 vaccination record cards were government property." Dkt. 44 at 1. Non-expert (or lay) witnesses may only testify to opinions or inferences "which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on

17

scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Subsection (c) was added in 2000, in an attempt to rein in the admission of expert testimony under the guise of lay opinion. Fed. R. Evid. 701, Advisory Committee's note to 2000 amendment (noting that the amendment was aimed at "eliminat[ing] the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.").

Witness 2's testimony regarding the printing of Covid cards falls squarely within the parameters of lay opinion testimony. Witness 2 will testify to the characteristics of Covid cards based on his years of experience working in the printing industry and his specific experience working on the printing of Covid cards. Based on these years of experience, Witness 2 is well situated to opine as to whether the cards admitted into evidence are consistent with the cards that InnerWorkings was tasked with printing on behalf of the U.S. Government.

While the government will seek to have Witness 2 testify to the authenticity of the cards, it will not seek to have Witness 2 opine as to whether the cards are government property. Rather, the government will seek testimony from witnesses from the CDC and HHS that the Covid cards contained in the ancillary kits distributed to pharmacies and other providers were government property. Unlike Witness 2's testimony, the testimony from the CDC and HHS witnesses does not constitute lay opinion testimony. The CDC witness will testify about the CDC's

Covid-19 Vaccination Program and the role that ancillary kits, which contained vaccination cards, played in this program. The HHS witness will testify to the contract that was executed between the CDC and McKesson, a government contractor, to source the materials for the ancillary kits and distribute the kits on behalf of the U.S. Government. Both witnesses are federal employees who are equipped to testify that the contents of the ancillary kits were government property. Eliciting testimony about whether the contents of the ancillary kits, which included vaccination cards, were property of the U.S. Government is factual testimony that falls within the purview of their knowledge of the Covid-19 Vaccination Program rollout and the Covid-19 kitting contract with McKesson. Neither of these witnesses will opine as to whether the Covid cards admitted into evidence that were purchased on eBay are government property. The only opinion testimony the government intends to elicit is from Witness 2, who will authenticate vaccination cards admitted into evidence, but will not opine on whether those cards are government property. As such, none of the government's witnesses will provide opinion testimony of the nature that the defendant seeks to bar, and the Court should deny the defendant's motion.

\*     \*     \*

For the reasons stated herein, the government respectfully requests that the Court deny the defendant's motions *in limine*.

Respectfully submitted,

Dated: June 13, 2023

GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Department of Justice

By:    /s *Victor B. Yanz*
       Victor B. Yanz
       Claire T. Sobczak
       Trial Attorneys
       U.S. Department of Justice
       Criminal Division, Fraud Section
       219 South Dearborn St., Rm. 500
       Chicago, Illinois 60604
       Email: victor.yanz2@usdoj.gov
       (202) 957-2993