UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 21 CR 505 |
|---|---|
| v. | |
| TANGTANG ZHAO | Judge Manish S. Shah |

**GOVERNMENT'S MOTION *IN LIMINE* FOR PRETRIAL
RULING ON ADMISSIBILITY OF VACCINATION RECORD CARDS**

The United States of America, by GLENN S. LEON, Chief of the Fraud Section, Criminal Division, United States Department of Justice, respectfully submits this motion *in limine* seeking a pretrial ruling on the admissibility of certain government exhibits at trial. The proposed exhibits are CDC COVID-19 vaccination record cards ("COVID cards"), which the government intends to admit through witnesses who purchased the cards over the Internet. Specifically, the government is seeking to authenticate these COVID cards through the witnesses who purchased them and the case agent who completed the chain of custody for them. Trial is scheduled to begin on June 20, 2023.

I. **RELEVANT BACKGROUND**

At trial, the government intends to call three witnesses who purchased one or more COVID cards from the defendant through eBay. Two witnesses are referenced in the indictment as S.P. and R.S. The third witness has been referenced in prior

motions *in limine* and responses as Witness 1.[1] Through these witnesses, the government intends to admit the COVID cards the witnesses purchased, subject to subsequent chain of custody testimony by a case agent from the Federal Bureau of Investigation (FBI).

In each instance, there are additional individuals who handled the evidence, outside of the buyers and the testifying FBI case agent, whom the government does not intend to call as witnesses at trial. In particular, S.P. is a resident of New York, and FBI agents from New York visited S.P. at his residence, obtained 10 COVID cards from S.P. and admitted them as evidence at a New York FBI evidence control room. From there, New York FBI evidence personnel arranged for the transport of the evidence to the FBI evidence control room in Chicago.

Similarly, FBI agents obtained 14 COVID cards directly from R.S. at R.S.'s Louisiana residence. The FBI agent who took control of R.S.'s COVID cards transferred those cards to the case agent in Chicago, who admitted the evidence into an FBI evidence control room in Chicago.

At trial, the government does not intend to call FBI agents or evidence control personnel from New York or Louisiana, nor does it intend to call any other personnel from the Chicago FBI office other than the case agent, to establish the intermediary

---

[1] The defendant sought to bar the testimony of Witness 1 (*see* Dkt. 39), while the government sought to admit the testimony of Witness 1 (*see* Dkt. 40). The Court ruled that Witness 1 may testify, with certain caveats that are not relevant to this motion. *See* Dkt. 48.

links in the chains of custody. Rather, the government intends to establish the chain of custody for these cards through the testimony of S.P., R.S., and the FBI case agent who was the final individual to handle these cards in their chain of custody.

Finally, in the case of Witness 1, after receiving the COVID card he purchased through eBay, Witness 1 ultimately sent the COVID card (as well as the mailing envelope and greeting card in which the COVID card was shipped to Witness 1) to the Illinois Department of Financial and Professional Regulation (IDFPR).[2] Case agents, who had an open investigation regarding the sales of COVID cards through eBay, learned that Witness 1 had provided the evidence to IDFPR, and contacted IDFPR to retrieve the evidence. IDFPR provided the evidence to a case agent from the Department of Health and Human Services, Office of the Inspector General (HHS-OIG). That agent provided the evidence to his partner case agent from the FBI, who admitted the evidence into the FBI evidence control room in Chicago. At trial, the government does not intend to call a witness from IDFPR. While it does intend to

---

[2] Although the government does not intend to offer the following details at trial, it provides them here to the Court for additional context:

After receiving the COVID card following his purchase, Witness 1 contacted a health news reporter on or about April 9, 2021, about the purchase. That news reporter wrote an article about the purchase, and about the illicit sale of COVID cards generally, which was published on April 18, 2021. The article noted the defendant's eBay username and stated the account user "confirmed he lives in the Chicago area and works at a pharmacy." IDFPR contacted the news reporter on or about April 22, 2021, and several days later, the reporter forwarded Witness 1 the information for the IDFPR point of contact. Witness 1 reached out to IDFPR, and thereafter, on April 27, 2021, sent the materials in question to IDFPR.

3

call the HHS-OIG case agent, it will seek admission of the evidence at issue prior to that testimony.

For reasons of judicial economy, the government intends to establish authenticity of the COVID cards sold to S.P., R.S., and Witness 1 through testimony from the buyers (i.e., the first "link" in the chains of custody), as well as the Chicago FBI case agent who last handled evidence (i.e., the final "link" in the chains). The government seeks a pretrial ruling on admissibility of the cards based on these facts, such that it can arrange for the appearance of additional chain of custody witnesses, if necessary.

## II. ARGUMENT

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed.R.Evid.901(a). For physical evidence, this may include establishing an adequate chain of custody of the item in question.

First, the government's proposed authentication of the COVID cards using only the buyers and the Chicago case agent is sufficient under the law. "It is well accepted in this [Seventh] [C]ircuit that '[a] perfect chain of custody is not a prerequisite to admission.'" *United States v. Moore*, 425 F.3d 1061, 1071 (7th Cir. 2005) (quoting *United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002)). *See also United States v. Brown*, 136 F.3d 1176, 1181 (7th Cir.1998) ("lack of proof regarding a chain of custody does not render [evidence] inadmissible"). Further, "the government need only show

4

that it took reasonable precautions to preserve the original condition of the evidence, it does not have to exclude all possibilities of tampering with the evidence[.]" *Moore*, 425 F.3d at 1071. "[A]ny gaps in the chain go to the weight of the evidence and not its admissibility." *United States v. Tatum*, 548 F.3d 584, 587 (7th Cir. 2008).

Finally, the Court should presume that, while the COVID cards were in the custody of the FBI, HHS-OIG, and IDFPR, all appropriate evidence-handling protocol were followed. "In making the admissibility determination, the district court employs a 'presumption of regularity' and assumes that the government officials who had custody of the exhibits discharged their duties properly." *Tatum*, 548 F.3d at 587.

For the reasons stated herein, the government respectfully requests that the Court grant its motion *in limine*.

Respectfully submitted,

Dated: June 19, 2023
GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Department of Justice

By:  */s Victor B. Yanz*
Victor B. Yanz
Claire T. Sobczak
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
Email: victor.yanz2@usdoj.gov
(202) 957-2993