UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 21 CR 505 |
| v. | ) | Hon. Manish S. Shah |
| | ) | |
| Tangtang ZHAO | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL**

The Defendant, Tangtang Zhao, hereby moves this Honorable Court pursuant to Rules 29(c) and 33(a) of the Federal Rules of Criminal Procedure for a judgment of acquittal or, in the alternative, a new trial, as to Counts One through Twelve. In short, there were evidentiary deficiencies in the government's case, as well as various legal errors separately or in combination before and during trial that deprived Zhao of rights guaranteed by the United States Constitution. These issues warrant a judgment of acquittal or, at the least, a new trial.

## INTRODUCTION

On August 12, 2021 Tangtang Zhao was indicted on 12 counts of violating 18 U.S.C. § 641, Theft of Government Property. The alleged theft involved blank COVID-19 Vaccination Record Cards from March 25, 2021, thru April 11, 2021. Zhao's primary defense at trial was that the Covid Vaccination Cards were not Government Property as the Government did not maintain "sufficient control" over the blank Vaccination Cards after they were delivered to the end provider, Walgreen's.

## LEGAL STANDARDS

Rule 29(c) requires the entry of a judgment of acquittal when after viewing the evidence in light most favorable to the government, the trial court finds that no rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Seventh Circuit will uphold a district court's decision to grant a Rule 29(c) motion where the district court finds "no evidence on which a rational jury could have returned a guilty verdict." *United States v. Murphy*, 406 F.3d 857, 861 (7th Cir. 2005).

Rule 33(a) provides district courts broad discretion to grant new trials when "the interest of justice so requires." Fed. R. Crim. P. 33(a). This arises when, for example, "the substantial rights of the defendant have been jeopardized by errors or omissions during trial," *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989), or when the "weight of the evidence . . . 'preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Washington*, 184 F.3d 653, 657-58 (7th Cir. 1999) (citing *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)). The circumstances outlined above and detailed below – which include evidentiary errors, inaccurate jury instructions, a lack of competent evidence as to an essential element of all twelve of the convicted charges mandate relief for Zhao according to these standards.

**ARGUMENT**

1. Zhao's Rule 29 Motion for Judgement of Acquittal was improperly denied by this Honorable Court. R766. In short, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. Zhao's primary defense at trial was that the COVID-19 Vaccination Record Cards were not Government Property as the Government did not maintain "sufficient supervision and control" over the blank Vaccination Cards after they were delivered to the end provider, Walgreen's. After much discussion between the parties, this Honorable Court instructed the Jury as follows:

2

An item or thing of value belongs to the United States if the federal government maintains sufficient supervision and control over the property after the property was distributed to some other entity. R777.

In short, this Jury Instructions gave no guidance to the jury regarding the definition of the word "sufficient" stating:

> THE COURT: And if I were to give that instruction as largely proposed by the defense, would the defense be content that the jury then decide how much is sufficient?
> MR. PISSETZKY: Yes. R 709

Zhao states that this instruction is impermissibly vague as it refuses to instruct the jury on the essential element of Zhao's defense. The vague character of the word "sufficient"[1] is supported by the fact that during deliberations the jury sent the following note to this Honorable Court:

> "We, the jury, needs to have "judge clarification on: "'an item or thing of value belongs to the United States if the federal government maintains sufficient supervision and control over the property after the property was distributed to some other entity.' "What defines sufficient supervision and control?" Signed "Bradley Kaplan."     R842

This Honorable Court answered the note as follows:

> "There is no additional definition of sufficient supervision and control. That is an issue for you to decide." R843.

3.    The phrase "sufficient supervision and control" has been defined in the context of 18 U.S.C. § 641. Courts have treated the ultimate question of whether something is government property as a legal question for a court to review de novo. See *United States v. Osborne*, 886 F.3d 604 (6th Cir. 2018) *citing* *United States v. Foulks*, 905 F.2d 928, 929–30 (6th Cir. 1990); *United States v. McKay,* 274 F.3d 755, 759 (2d

---

[1] "Sufficient" is defined by Merriam-Webster Dictionary as "enough to meet the needs of a situation." https://www.merriam-webster.com/dictionary/sufficient   Clearly the CDC's controls related to the COVID-19 vaccination cards were not sufficient to meet the "needs of the situation." This is best shown by the fact that during the time period in the indictment "the CDC started receiving questions about (whether the COVID-19 vaccination cards were ancillary supplies) and hearing reports of cards being sold and stolen and shared."    R332.

Cir. 2001); *United States v. Littriello,* 866 F.2d 713, 716 (4th Cir. 1989); *United States v. Long,* 996 F.2d 731, 732 (5th Cir. 1993). This Honorable Court cited *United States v. Scott,* 784 F.2d 787, 791, (7th Cir, 1986) during the jury instruction conference for the "supervision and control test" by stating that:

> In determining if stolen funds are things of value of the United States, the key factor is whether the federal government still maintained supervision and control over the funds at the point when the funds were stolen." R704…. Because of the government's lack of maintenance of supervision and control, one could infer that (the Government) have abandoned it, and so it's no longer government property. R706

Zhao submits that the evidence at his trial supports that the Government did not maintain "sufficient supervision and control" over the blank Covid Vaccination cards and he should be found not guilty as a matter of law.

4. The following evidence supports that the Government did not maintain "sufficient supervision and control" over the blank Covid Vaccination cards and he should be found not guilty as a matter of law.

a) The Government stated in their rebuttal argument that:

> What greater control and supervision does the federal government need to have than to say, "Here are the cards, follow these rules, or we're done"? That's control. That's supervision. R831.

But the rules were not clear that the COVID-19 Vaccination Record Cards were Government Property. Most importantly, the Provider Agreement between the CDC and Walgreen's was not clear that the COVID-19 Vaccination Record Cards were Government Property.

Government Witness Michelle Banks worked for the CDC and was primarily responsible for the provider agreement between the CDC and Walgreen's. On June 11th, 2021 the CDC explicitly stated for the first time that the COVID-19 Vaccination Record Cards were Government Property. R291. Zhao's charged conduct occurred between March 25, 2021 and April 11, 2021.

During this period, Ms. Banks admitted that pursuant to the provider agreement between the CDC and Walgreen's that Walgreen's is not a Federal Contractor. R306. Ms. Bank's admitted that that there is nothing in the provider agreement that states that the COVID-19 Vaccination Record Cards are Government property. R307. Ms. Banks admitted that there is nothing in the "playbook" that tells Walgreens what to do with the surplus cards. R308. Ms. Banks admitted that the CDC did not provide Walgreens with guidance on providing people an extra blank card for backup purposes. R326. Ms. Banks admitted that the provider agreement regarding the COVID-19 vaccination cards only requires that Walgreens won't sell it. R327. Ms. Banks admitted that nothing in the provider agreement or the playbook talks about blank cards or surplus cards. R327. Ms. Banks admitted there is nothing in the provider agreement or the playbook that prohibits people from possessing blank COVID-19 Vaccination Record Cards. R333. Most importantly, Ms. Banks admitted that at the time of the creation of the provider agreement, the CDC never imagined that COVID-19 Vaccination Record Cards would be sold. R333. In effect, there was never any contemplation by the CDC as to whether the COVID-19 Vaccination Record Cards were government property. This is not sufficient supervision and control by the CDC, and Mr. Zhao must be acquitted.

In the end during their rebuttal argument, the Government stated accurately their position on whether the blank COVID-19 Vaccination Record Cards were clearly Government Property during the time of Zhao's charges in March and April of 2021. Specifically, the Government stated:

> "Was it clear before the June 21, 2021 Amendments to the Provider Agreement? *Probably*, but CDC needed to make it explicitly clear that you can't take these home with you, Walgreens employees. You can't share

5

them with your family. You can't stand on the street corner and pass them out as long as you're doing it for free. R832. (emphasis added).

In conclusion, "*Probably*" is not enough to convict Mr. Zhao.

  b)  On this issue, there is no doubt Mr. Zhao was denied basic due process by the Government's use of the word "*Probably*" in their rebuttal argument. Specifically, the Government's use of the word "*Probably*" impermissibly diminished the Government's Burden of Proof at a critical point in Mr. Zhao's trial. To start, "*Probably*" is a word generally associated with the preponderance burden of proof in a Civil Trial. *See* 7th Circuit Pattern Jury Instruction 1.27. (When you have considered all the evidence in the case, you must be persuaded that it is more *probably* true than not true." (Emphasis added). There is no doubt that this Honorable Court instructed the jury as to the proper burden of proof in Mr. Zhao's trial. ("The government has the burden to prove beyond a reasonable doubt the elements of the crimes charged in the indictment." R775. And further, "The government has the burden to prove beyond a reasonable doubt the elements of the crimes charged in the indictment.") *Id.* But this Honorable Court instructed the jury before closing arguments. And the diminished burden of proof was introduced to the jury during the Government's rebuttal argument. In effect, Mr. Zhao had no opportunity to correct the Government's misstatement of the law. This denied Mr. Zhao his due process right to a fair trial.

 c) Government Exhibit 109 "serves as a repository for any update to the CDC COVID-19 Vaccination Provider Agreement." Government Exhibit 109, page 2 demonstrates clearly that the Government knew how to specifically state ancillary kit supplies were Government Property as soon as January 20, 2022. As part of the Mask Distribution Initiative, the Government makes explicit that

6

> **CDC Requirements**
>
> *Mask Distribution Initiative* (January 20, 2022)
>
> As a subcomponent of the CDC COVID-19 Vaccination Program, designated enrolled providers are authorized to
>
> **U.S. Government Property**
>
> Masks provided through this initiative are U.S. government property and remain U.S. government property until received by the individual who intends to wear the mask. Any sale, diversion, or other distribution of these masks for payment, whether direct or indirect, is prohibited and may be subject to civil or criminal prosecution.

In short, this is clear evidence that the Government knew how to declare explicitly that they maintained sufficient control and authority over the COVID-19 Vaccination Record Cards. This is clear evidence that the COVID-19 Vaccination Record Cards were not considered Government Property by the CDC.

d) Brian Hall worked for HHS and was the Assistant Secretary of Preparedness and Readiness. Hall was also the "core" on the McKeeson Covid Ancillary Kit Contract. R338. Hall testified that the kit became Government property at the time of paying McKesson's invoice for the kit. R348. Hall was not aware of any of the details of contract between the CDC and Walgreen's. R359. Hall testified that McKesson's contract when the ancillary kit arrived at the dock of Walgreens. R360. Once the shipment arrived at the dock, there was a new contract between the CDC and Walgreens that controlled the ownership of the property. R360. Hall admitted that there was no return policy for the unused COVID-19 Vaccination Record Cards. R373. In short, Hall testified that McKeeson had no control or authority over the COVID-19 Vaccination Record Cards once they arrived at Walgreen's.

e) Andrew Proctor is the Director of Product Strategy For Government at McKeeson Medical-Surgical. His job was to provide the actual items for the Ancillary Kits. R379.

7

Proctor assigned the creation of printing the COVID-19 Vaccination Record Cards to Innerworkings. R382. Proctor testified that when the COVID-19 Vaccination Record Cards were received by McKeeson, they became the property of the HHS. Proctor vaguely testified that the property never transitioned out of possession of the Government. R390. Proctor testified unequivocally that McKeeson's contract ended when they delivered the Ancillary Kits to Walgreen's door. R407. In short, Hall testified that McKeeson had no control or authority over the COVID-19 Vaccination Record Cards once they arrived at Walgreen's.

    f) Brianca Marshall stated that here were no rules for where you could store the cards. R446. There were no rules prohibiting Walgreens from giving someone a blank card if they stated they lost their card. R447. There was no way to track or record the cards. no barcodes. R448. If you mistakenly misspelled their name, you were allowed to tear up the card and throw it away. R448 There was no way to know if cards had gone missing. R 449.

    g) Dave Staufer was the Senior director Of Specialty Pharmacy Operations. Walgreens. R488. Staufer testified that there was no cost to Walgreen's for the ancillary supplies. R491. Staufer stated that Walgreen's did not charge the patient for the Covid Vaccine or supplies, but Walgreen's did bill the patient's third-party insurance for the administration fee related to the Covid Vaccine. R483. Staufer testified that Walgreen's created their own COVID-19 Vaccination Record Card without guidance from the CDC for use in exception cases where there wasn't a record card at a particular store. R500. Stauffer stated that Walgreen's employees had to follow the rules and parameters of the COVID-19 playbook and the CDC provider agreement, and the employees were not allowed to sell the COVID-19 Vaccination Record Card. R513. Stauffer admitted that the February 25th, 2021, it says: "Diversion COVID-19 Vaccination Prohibited"

does not state that the ancillary kit is government property. R529. Staufer stated that he never received any communication from the CDC in February, March, or April 2021 that stated that ancillary kits are government property. R529. Staufer stated that the Playbook was a document created by Walgreen's without input from or approved by the CDC. R531. There is nothing in the Playbook that states how to store the COVID-19 Vaccination Record Cards. That there was no employee guidance regarding giving blank cards away. R548. And that there was no mechanism for Walgreen's to return supplies to the Government. R548. Staufer stated that prior to May 14, 2021[2], there was no directive relating to minimizing theft or potential fraudulent use of the vaccination cards. R 551. That Walgreen's had no requirement from the Government to account for the COVID-19 Vaccination Record Card. R556. That Walgreen's decision to lock up the cards on May 14, 2021 was Walgreen's decision and not from the CDC. R567. That the first directive from the CDC stating specifically that the COVID-19 Vaccination Record Card was on June 11, 2021. R571.

h) Taken as a whole, the testimony of the Government's witnesses shows that the Government's control and authority over the COVID-19 Vaccination Record Card ended at the time McKeeson dropped off the COVID-19 Vaccination Record Cards at Walgreen's. After the COVID-19 Vaccination Record Cards were dropped off at Walgreen's, the Government did not exercise sufficient control and authority over the COVID-19 Vaccination Record Cards so that they remained Government property as required. For this reason, Mr. Zhao should be found not guilty as a matter of law.

5. This Honorable Court abused its discretion in allowing Brian Hall and Andrew Proctor to testify that the COVID-19 Vaccination Record Cards were Government Property after they were delivered to Walgreen's. To start, Mr. Zhao submits that their

---

[2] This is after the period charged in the Indictment.

actual testimony at trial clearly showed that McKeeson had no authority over the cards after they were delivered to Walgreens. Further, both readily admitted that there was a separate contract between Walgreen's and the Government that they were not privy too. In essence, both witnesses admitted that they did not have the foundational basis to testify to whether the Government had control and authority over the cards after they were delivered to Walgreens. This Honorable Court stated that they both did. In short, Hall and Proctor gave their opinion regarding the ultimate issue in Mr. Zhao's trial. If an opinion is going to be given the jury should be warned.[3] This did not happen despite repeated objections by Mr. Zhao.

In effect, Hall and Proctor gave expert opinions that confused the jury. Further, these opinions came in without the warning of a opinion instruction as stated in Seventh Circuit Committee (2022 Ed.) 3.13.

6. Two Jury Instructions by this Honorable Court mislead the jury. First, "Value is established at the time of possession rather than at the time of theft. R777. Second, "If you find that the defendant was in possession of property that recently had been stolen, you may infer that he knew it was stolen. You are not required to make this Inference." 778. In effect, both Jury Instructions conclude that a theft of the COVID-19 Vaccination Record Cards occurred. In short, there is a third possibility for possession of the COVID-19 Vaccination Record Cards, that the Government had abandoned that cards. This Honorable Court admits that this possibility exists by stating, "Because of the

---

[3] See for instance the Jury Instruction regarding Kenneth Lamb.

> You have heard a witness, namely Kenneth Lamb, who
> gave opinions and testimony about COVID-19 vaccination cards.
> You do not have to accept this witness' opinions and testimony. You
> should judge this witness' opinions and testimony the same way you judge
> the testimony of any other witness. In deciding how much weight to give
> to these opinions and testimony, you should consider the witness'
> qualifications, how he reached his opinions, and the factors I have
> described for determining the believability of testimony. R775.

government's lack of maintenance of supervision and control, one could infer that (the Government) have abandoned it, and so it's no longer government property." (analayzing *Scott. Id.* R706.

7. This Honorable Court abused its discretion in ruling that "FRE 404(b) allows evidence that the cards that the defendant is selling are authentic genuine and that his listings are taken down but he continues to sell anyway shows that he had knowledge that the cards are not his property." R 24. Further, this Honorable Court abused its discretion by stating in this regard that "While each card is not unique, the cards generally are a unique commodity. The sales are all contemporaneous and similar to the charged sales that makes them relevant on the issue of knowledge within respect to the charge sales." R25.

8. This Honorable Court abused its discretion in ruling that "chats related to charged sales will be allowed." R26.

9. This Honorable Court abused its discretion by allowing "witness one to testify because the transaction involved the pouch and how that sale occurred shows knowledge he wasn't authorized to sell. The concealed nature makes it more likely that he was conscious of his prohibited nature that goes to knowledge and intent the witness can say that he's a doctor and that he was curious about the cards." R28.

10. This Honorable Court abused its discretion by denying defendant's Motion to Bar the Washington Post evidence by stating that "The defendant's reaction to the notice that someone from The Washington Post was looking into his activity was probative of his knowledge and intent and is not unfairly prejudicial." 29

11. In the same vein, this Honorable Court abused its discretion by denying Defendant's Motion to Reconsider the Washington Post Message. In short, the defense alleged that there is no evidence that the defendant saw the (Washington Post) message.

11

R4. This Honorable Court responded that "If the circumstantial evidence is so weak as to not support a jury reaching that conclusion that he saw it and was reacting to it, I may have to exclude it after the fact and instruct the jury not to consider it; but based on the pretrial proffer, it does seem to me that there is at least some Foundation." R4. During the trial, this Honorable Court further ruled that I do think that "If there are even competing inferences that can be drawn as to why Mr. Zhao did what he did after certain events, that doesn't mean that the Washington Post -- alleged Washington Post message is inadmissible for the purposes that I identified earlier. I think all of this ultimately goes to the weight to and not admissibility." R67.

12. In the same vein, this Honorable Court abused its discretion by denying Defendant's Second Motion to Reconsider the Washington Post Message based on relevance or that Mr. Zhao saw it or acted based on it. R668. In short, this Honorable Court Ruled that "Pursuant to my earlier rulings, I'm satisfied that there is a sufficient circumstantial basis to conclude that the defendant received the message. Arguments can be had that he didn't, and that's fodder for argument and inference, but the item is -- there's no dispute as to the authenticity of the message having been recovered from within the eBay records. So I'm standing by my earlier ruling." R670 .

13. This Honorable Court abused its discretion by denying defendant's Motion to Bar eBay administrative policy by stating that "defendants conduct after being notified there is a probation on selling government items is probative of whether he believed or knew that the cards were not his property and whether he intended to deprive the owner of its use. R33. With regards to eBay policy, the key point is that the defendant received notice and how he reacted to that notice that he could not sell the property." R33.

14. The aggregate Value instruction was vaguely worded and caused confusion on this important element. This Honorable Court admitted as much by stating:

> While I understand there may be some concern that it's not the most artfully phrased instruction, it's the best I could do, and I will have to live with the consequences of that. But I think it is an accurate statement, and I will go with option A. 721

The Defense tried to add some clarity to this instruction by asking for an interrogatory verdict form. This Honorable Court denied that request thus depriving Mr. Zhao of his right to a fair trial. R781 Specifically, this Honorable Court ruled that

> THE COURT: Too late. You have waived that request. We have finalized the verdict form, and it's too late. And I will just note that the Committee Comment with respect to "aggregate value" advises that the jury be instructed on that issue in the form of an instruction, not in the form of a special interrogatory. And during our discussions about the "aggregate value" issue, I proposed to the parties that we have an Apprendi-style verdict form that we would have in a drug case, for example, and no one took me up on that invitation. And then we proposed the form, and the defense agreed to the form, the verdict form. So the time to revise the verdict form has passed and the defense has affirmatively waived any changes by accepting the verdict form as has been drafted. So that request is denied. R 781

In conclusion, the Defendant, Tangtang Zhao, hereby moves this Honorable Court pursuant to Rules 29(c) and 33(a) of the Federal Rules of Criminal Procedure for a judgment of acquittal or, in the alternative, a new trial, as to Counts One through Twelve, There were evidentiary deficiencies in the government's case, as well as various legal errors separately or in combination before and during trial that deprived Zhao of rights guaranteed by the United States Constitution. These issues warrant a judgment of acquittal or, at the least, a new trial.

By His Attorney,

/s Michael J. Petro

Attorney for Tangtang ZHAO
110 N. 11th Street, Suite 202
Tampa, Florida   33602
312-913-1111

13

**CERTIFICATE OF SERVICE**

I, MICHAEL J. PETRO, an attorney, state that I caused to be filed, by electronic filing (ECF), with the Clerk of the United States District Court for the Northern District of Illinois, the foregoing

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL**

The undersigned also certifies, as to the following parties, that in accordance with F.R.Civ.P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF), the foregoing pleading, along with a notice of motion if required, were served pursuant to the district court's ECF system on Friday, August 04, 2023.


By His Attorney,

/s Michael J. Petro

Attorney for Tangtang ZHAO
110 N. 11th Street, Suite 202
Tampa, Florida    33602
312-913-1111