UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TANGTANG ZHAO | No. 21 CR 505<br><br>Judge Manish S. Shah |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by GLENN S. LEON, Chief of the Fraud Section, Criminal Division, United States Department of Justice, respectfully submits its sentencing memorandum for defendant Tangtang Zhao ("Zhao" or "defendant"). For the reasons stated below, the government respectfully requests that the Court impose a sentence of six months of imprisonment.

**I.  Executive Summary**

On August 12, 2021, a grand jury in the Northern District of Illinois returned an Indictment charging the defendant with 12 counts of theft of government property, in violation of 18 U.S.C. § 641. The Indictment alleged that Zhao was a licensed pharmacist and that, between March 25, 2021, to April 11, 2021, he stole blank COVID-19 ("COVID") vaccination record cards from his employer, Walgreens, and sold the cards for profit. Dkt. 1. Each count in the Indictment related to a different sale of vaccination record cards. The defendant proceeded to trial on June 20, 2023, and on June 23, 2023, a jury found the defendant guilty on all counts. Dkt. 66, 69.

In its pre-sentence investigation report ("PSR"), the U.S. Probation Office calculated a Guidelines range of zero to six months' imprisonment, based on an

offense level of 8 and a criminal history category of I.[1] PSR ¶ 71. The government respectfully requests a sentence of six months' imprisonment. Additionally, the government will seek in a separate motion the forfeiture of $5,600, which is the amount of money the defendant made through is criminal conduct.

## II. Background and Overview of the Offense

At trial, through witness testimony and documentary evidence, the government established the following facts:

In the spring of 2021, the defendant was employed as a licensed pharmacist at a Walgreens pharmacy in Chicago. In this position, the defendant had access to COVID vaccination record cards issued by the Center for Disease Control ("CDC") to Walgreens for use in administering COVID vaccines to the public. Tr. At 578-79. The cards were procured and paid for by the Federal government as part of the CDC's national COVID vaccination initiative. Tr. At 340. The defendant stole COVID vaccination record cards from his workplace, then sold them for his personal enrichment on eBay, an internet marketplace.

The defendant, operating under the eBay username "asianjackson," marketed the cards as authentic vaccination cards from the CDC. Tr. 595, 641. For instance, in listing the cards for sale, he used descriptions such as "Authentic CDC Vaccination

---

[1] While the offense level calculation was accurate at the time the Probation Office drafted the PSR, the government believes that subsequent amendments to the U.S. Sentencing Guidelines affect the calculation. In particular, Zhao qualifies as a "Zero-Point Offender" under U.S.S.G. §4C1.1, which became effective on November 1, 2023. As such, the defendant should receive a two-point reduction in offense level. This issue does not affect the defendant's Guidelines range, which remains zero to six months.

Record Card" and "Authentic Blank CDC Vaccination Record Card." *See* GEX 407, 1001 at 34. In numerous instances, other eBay users asked the defendant whether the cards were genuine, and he responded in the affirmative. GEX 407, 1001 at 15.

Between March 24, 2021, and April 13, 2021, the defendant created one or more sales listings almost every day, and each listing advertised the sale of COVID vaccination record cards. *See* GEX 405, 1001 at 35. In total, through those listings, the defendant made 658 cards available for purchase on eBay. *Id*. The defendant initially set the price at $7.99 per card, but he increased the price six times over this three-week period, and ultimately sold cards for $10.99 each. *Id*. In total, the defendant sold 630 cards to dozens of unique purchasers, resulting in profits of approximately $5,600 that were deposited into the defendant's PayPal account.

On numerous occasions, eBay took administrative action against the defendant because his conduct did not comply with eBay's rules and policies. On April 1, 3, 7, and 13, 2021, eBay notified the defendant that his listings violated eBay's policy against the sale of government property; each notification also advised the defendant that eBay had removed the listings in question. GEX 409, 411-414. On April 15, 2021, eBay imposed a 10-day selling restriction against the defendant's account, again notifying him that marketing COVID vaccination record cards violated the policy against the sale of government property. GEX 408, 415.

On at least one occasion, the defendant took deceptive measures to conceal his conduct. In particular, on April 2, 2021—one day after he received his initial warning from eBay that he was not permitted to sell government property on the platform—

3

the defendant created a listing advertising 50 "Clear Pouches For CDC Vaccination Record Card." Bijan Salehizadeh, an eBay user who testified for the government at trial, became aware of this listing and wondered whether it was a cover for the sale of actual COVID vaccination cards. Tr. at 229. Mr. Salehizadeh ordered the item from the defendant on April 2, 2021. Tr. at 229-30. On April 3, 2021, the defendant messaged Mr. Salehizadeh to advise that eBay had removed the sales listing, but that the item would still ship. Tr. at 231-32. On April 9, 2021, Mr. Salehizadeh received an authentic COVID vaccination record card in the mail. Tr. at 232.

Throughout the time frame in question, the defendant regularly and promptly responded to chats sent by other eBay users about the vaccination record cards for sale. However, on April 15, 2021, the defendant received the following message from another user:

> Hi Tangtang - I'm a Washington Post health reporter who's been writing about the Covid-19 vaccines. I see that you've sold more than 100 "authentic CDC vaccination record" cards through eBay. There's a good chance that I'll be writing about your sales on eBay in the next few days. . . . I think it's important that we talk before I write my story. If you'd prefer to communicate outside of eBay, please let me know when you're available.

GEX 407, 1001 at 30.

The defendant did not respond to this message. After the message from the purported news reporter, other users continued to message the defendant about purchasing vaccination cards. The defendant did not respond to most of those users. To the users to which he did respond, the defendant sent the following message, or

4

something similar: "Hello, This (sic) is the original owner of the account. My account was compromised and that person was using my account to selling (sic) these vaccination cards. If you received this product, please destroy them. Refund will be issued. I'm sorry about the trouble." GEX 407, 1001 at 33. Following this, the defendant did not list or sell any more vaccination record cards.

At trial, the defendant did not dispute that he sold the CDC-issued COVID vaccination record cards through his eBay account, or that the cards were authentic. Rather, the defendant disputed that the cards qualified as government property.

### III. Sentencing Guidelines Calculations

The 2023 Sentencing Guidelines Manual is applicable in this case. The defendant's base offense level is 6, pursuant to U.S.S.G. §2B1.1(a)(2). The government agrees with the Probation Office that the defendant should receive a two-point enhancement under U.S.S.G. §3B1.3 because, in committing the offenses, he abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offenses. PSR ¶ 23. In particular, he exploited his position as a Walgreens pharmacist to gain access to COVID vaccination record card storage in order to steal blank cards. As referenced in footnote 1, the government believes the defendant should receive a two-point offense level reduction as a "Zero-Point Offender" under U.S.S.G. §4C1.1. In addition, the government agrees that the defendant has no prior criminal convictions, resulting in a criminal history category of I. PSR ¶ 34. The applicable advisory Guidelines range based on this information is zero to six months.

5

In its sentencing recommendation disclosure, the Probation Office recommended a sentence of one year probation and a fine of $5,600.

IV.     **Select Factors Under 18 U.S.C. § 3553(a)**

The government respectfully submits that a sentence of six months' imprisonment is sufficient, but not greater than necessary, to address the factors laid out in 18 U.S.C. § 3553(a). In particular, the government argues that such a sentence fairly considers the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, the need for the sentence to promote respect for the law and provide a just punishment, and the potential for unwarranted sentencing disparities when compared to similarly situated defendants. These factors are discussed further below.

   A.     **Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

The conduct of the defendant in this case is serious, particularly when considered in the context of the historical moment in which it occurred. The President of the United States first declared a national emergency due to COVID on March 13, 2020.[2] Federal, state, and local governments, as well as private businesses, took extreme precautionary measures to attempt to limit the spread of COVID within the United States. For instance, the federal government imposed travel restrictions on

---

[2] Proclamation 9994, "Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak," viewable at https://www.federalregister.gov/documents/2020/03/18/2020-05794/declaring-a-national-emergency-concerning-the-novel-coronavirus-disease-covid-19-outbreak; last viewed November 13, 2023.

6

26 European countries.³ The state of Illinois ordered the closure of all kindergarten through 12th grade schools;⁴ it also mandated, with few exceptions, that individuals stay in their homes, and it prohibited gatherings of more than 10 people.⁵ When schools re-opened in the fall of 2020, many did so only virtually, in an effort to have students remain in their homes. These were unprecedented times in which authorities took extraordinary measures in the name of public health.

Despite these severe measures to limit the spread of COVID, by the end of 2020, more than 385,000 Americans had died from the virus.⁶ But, amidst the turmoil and tragedy, the end of 2020 brought reason for hope. In December of that year, two companies, Moderna and Pfizer, received emergency approval of a COVID vaccine from the Food and Drug Administration ("FDA"). Tr. at 270. The CDC immediately began a rollout of the vaccines, working with all 50 states to implement vaccination programs. Tr. at 271-72.

---

³ *See* Proclamation 9993, "Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting 2019 Novel Coronavirus," viewable at https://www.federalregister.gov/documents/2020/03/16/2020-05578/suspension-of-entry-as-immigrants-and-nonimmigrants-of-certain-additional-persons-who-pose-a-risk-of; last viewed November 13, 2023.

⁴ State of Illinois, Executive Order 2020-05, "Executive Order in Response to COVID-19 (COVID-19 Executive Order No. 3)", March 13, 2020, viewable at https://www2.illinois.gov/Documents/ExecOrders/2020/ExecutiveOrder-2020-05.pdf, last viewed November 13, 2023; Executive Order 2020-31, "Executive Order in Response to COVID-19 (COVID-19 Executive Order No. 16)", April 1, 2020, viewable at https://www2.illinois.gov/ content/dam/soi/en/web/coronavirus/ documents/executiveorder-2020-18.pdf, last viewed November 13, 2023.

⁵ State of Illinois, Executive Order 2020-32, "Executive Order in Response to COVID-19 (COVID-19 Executive Order No. 30)", April 30, 2020, viewable at https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-32.2020.html, last viewed November 13, 2023.

⁶ According to the CDC, there were 385,676 deaths attributed to COVID as of December 31, 2020. In at least 91% of those deaths, COVID was listed as the underlying cause of death. For the remaining deaths, COVID was listed as a contributing cause of death. CDC, "COVID-19 Mortality Overview, Provisional Death Counts for COVID-19", viewable at https://www.cdc.gov/nchs/covid19/mortality-overview.htm, last viewed November 13, 2023.

As the federal government implemented these vaccination programs in the initial parts of 2021, however, there were concerns and fears throughout society regarding whether, or in what circumstances, vaccines would be required. The government called numerous witnesses at trial who testified about their decisions to purchase COVID vaccination cards from the defendant in the wake of this uncertainty. Ryan Scott, for instance, testified that he was apprehensive that he or his family would be unable to go to a grocery store for basic necessities: "I was hearing a lot of things from people that I knew, and so was kind of afraid that if things with the lockdowns got really, really serious, that I may need that [proof of vaccination] or a family member may need that [proof of vaccination] to get food or something like that." Tr. at 200. Similarly, Sadiki Pierre testified that he wondered whether forgoing the vaccine might threaten his very liberty: "You were hearing people might get arrested or something like that if you're not vaccinated or if you don't have, you know, the cards [showing proof of vaccination]." Tr. at 187.

This atmosphere of confusion and fear provided the backdrop for the defendant's criminal scheme in the spring of 2021. As COVID vaccinations were rolled out to a population still reeling from the catastrophic impact of a global pandemic, amidst rumors and speculation about what role proof of vaccination might play in a return to normalcy, the defendant recognized the value of his access to COVID vaccination record cards. He viewed the anxieties people had about the future as opportunities to capitalize on fear to enrich himself.

Further, through stealing blank COVID vaccination cards and selling them at

8

his chosen price, the defendant effectively thumbed his nose at the public health efforts of federal and local authorities. As a licensed pharmacist involved in the administration of COVID vaccines, Zhao was well aware of the importance of accurate vaccination record keeping. Through his criminal conduct, the defendant circulated 630 blank COVID vaccination cards to anonymous purchasers. In general, he had knowledge of the identity of his buyers beyond a name and mailing address, and he had no control over how those buyers chose to use the cards. Each of the 630 stolen vaccination cards the defendant sold created an opportunity for a purchaser to falsely represent himself or herself as vaccinated, skirting the restrictions authorities imposed in the name of public health.

Finally, there was no apparent need for the defendant to engage in the criminal conduct. He attended medical school, obtained a Doctor of Pharmacy degree, and was gainfully employed as a pharmacist at the time of the charged conduct. PSR ¶¶ 2, 56, 62. He did not report to the Probation Office any acute financial issues that led to his criminal conduct, and he was earning a biweekly salary of $3,700 at Walgreens at the time of his illegal conduct. PSR ¶ 62. In short, Zhao was well-situated to avoid engaging in criminal behavior; nonetheless, he chose to line his own pockets at the expense of the federal government and public health.

**B.   Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense**

A six-month sentence is necessary to promote Zhao's respect for the law, as he carried out his criminal conduct in deliberate defiance of government authorities. As

referenced *supra*, over a three-week period, eBay admonished Zhao numerous times about advertising COVID vaccination cards. Two of these warnings included the express language: "We removed your listing at the request of a Government body. eBay members must follow local and international laws and regulations, as well as eBay policies. …This policy helps ensure that important government regulations are followed."[7] The defendant therefore knew not only eBay's internal policies, but also the rule of law, prohibited him from selling COVID vaccination record cards. But that did not stop him. Zhao persisted in his illegal sales, and even attempted to evade detection by falsely claiming the items for sale were plastic "pouches." Tr. at 228-32. Upon learning that a news reporter was aware of his illegal sales, Zhao asked eBay users to destroy cards if they had purchased them from him in the past. GEX 407, 1001 at 33. This was a further attempt by the defendant to thwart any potential investigation into his criminal conduct.

A six-month sentence is also necessary to reflect the seriousness of the offense and provide just punishment. While the nature and circumstances of the offense are laid out in detail in Section IV.A. above, there is no way to know the full impact of Zhao's conduct. At the very least, the defendant undermined other people's ability to make educated choices about where they went and with whom they interacted during the pandemic. He enabled many others throughout the country to knowingly withhold information required for members of the public to make informed decisions that

---

[7] This language was redacted Government Exhibits 411 and 415 at trial. The unredacted versions of those warnings are attached as Sentencing Memo Exhibit A and B, respectively.

affected their health and well-being. COVID vaccination record cards were one of the few ways people were able to maintain security and control over their health during an unstable time. Vaccination controls during the pandemic provided individuals the ability to decide if or how to interact with other people. This decision-making power was particularly critical to those whose individual health conditions made the consequence of contracting COVID more dangerous. Zhao deprived countless individuals of the sliver of control that vaccination record cards were intended to provide. His conduct was serious, and his sentence should reflect that.

### C. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

Because the CDC has only issued COVID vaccination record cards since late 2020, the number of cases with facts similar to the instant case is relatively limited. However, the government was able to identify five federal criminal cases relating to the circulation of fraudulent and/or blank COVID vaccination cards. While each case has unique facts and are, in some way, distinguishable from the instant case, the government offers the following summaries:

#### 1. *United States v. Van Camp*, 22-CR-72 (WDWA)

Van Camp obtained a digital image of the CDC-issued COVID vaccination card and had fraudulent cards printed on cardstock such that they appeared legitimate. He then sold cards to more than 2,000 different individuals, some for as much as $150 per card, ultimately grossing more than $100,000 in proceeds. Van Camp pled guilty to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. §

11

371. His Guidelines range at sentencing was 12 to 18 months. On August 18, 2023, a court sentenced Van Camp to six months of imprisonment followed by three years of supervised release and a $100,000 fine.

### 2. *United States v. Gabel*, 23-CR-54 (WDWA)

Gabel was an accomplice of Van Camp, referenced above. She owned a commercial printing company and assisted Van Camp by printing the fraudulent COVID vaccination record cards. Gabel did not profit from the scheme beyond charging Van Camp the standard printing prices offered to other customers. Gabel pled guilty to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. She cooperated with the government against Van Camp, and her Guidelines range at sentencing was zero to six months. On August 18, 2023, a court sentenced Gabel to two years of probation and 50 hours of community service.

### 3. *United States v. Mazi*, 22-CR-36 (NDCA)

Mazi was a licensed naturopathic doctor in California who sold homeoprophylaxis pellets as a purported type of immunization against COVID. With each sale, she also provided the patient with a fraudulent COVID vaccination card ostensibly from the CDC, as well as instructions on how to complete the card to make it appear that the patient received a COVID vaccine authorized by the FDA. Through this scheme, Mazi distributed fraudulent COVID vaccination cards to at least 200 individuals. Mazi pled guilty to one count of false statements related to health care matters in violation of 18 U.S.C. § 1035, and one count of wire fraud, in violation of 18 U.S.C. § 1343. Her Guidelines range at sentencing was 27 to 33 months. On

November 29, 2022, a court sentenced Mazi to 33 months of imprisonment.

### 4. *United States v. Costanza*, 22-CR-155 (NDCA)

Costanza was an accomplice of Mazi, referenced above. He worked as Mazi's office manager, facilitating Mazi's scheme by issuing invoices, arranging shipments of the homeoprophylaxis pellets, and communicating with customers about the fraudulent COVID vaccine cards. Costanza pled guilty to one count of conspiracy to defraud the United States and to make false statements related to health care matters, in violation of 18 U.S.C. § 371; and one count of false statements to a government agency in violation of 18 U.S.C. § 1001(a)(2). His Guidelines range at sentencing was zero to six months. On August 30, 2023, a court sentenced Costanza to three years of probation.

### 5. *United States v. Rodriguez,* 22-CR-70 (EDNY)

Rodriguez worked as a nurse in the state of New York. Through his job, he had access to CDC-issued COVID vaccination record cards. Rodriguez sold these cards to customers, either in blank form, or after he had filled out the cards with fraudulent information. In total, Rodriguez sold at least 300 COVID vaccination record cards for a profit of more than $15,000. Rodriguez pled guilty to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. At sentencing, his Guidelines range was 30 to 37 months. On June 9, 2023, a court sentenced Rodriguez to 30 months of imprisonment.

### 6. A six-month sentence is appropriate and would not create sentencing disparities.

A six-month sentence would not create an unwarranted disparity among similarly situated defendants, as described above. As the creator and leader of the criminal plot, Zhao's conduct is akin to defendants Van Camp, Mazi, and Rodriguez, all of whom received custodial sentences longer than that sought for Zhao. Further, like Mazi and Rodriguez, Zhao worked in public health as a licensed professional, and like those defendants, he exploited his position to further his criminal scheme. While the custodial sentence sought by the government would be more severe than the probationary sentences handed down to Gabel and Costanza, those defendants served as accomplices in their respective cases to other, more culpable defendants. No such accomplice exists in this case. Rather, Zhao initiated and operated the entire criminal scheme on his own.

## V. Conclusion

For the foregoing reasons, the government seeks a sentence of six months of incarceration for the defendant.

> GLENN S. LEON
> Chief, Fraud Section
> Criminal Division
> U.S. Department of Justice
>
> By: */s/ Victor B. Yanz*
>     Victor B. Yanz
>     Claire T. Sobczak
>     Trial Attorneys
>     219 South Dearborn St., Rm. 500
>     Chicago, Illinois 60604
>     (202) 591-5418

**CERTIFICATE OF SERVICE**

The undersigned Trial Attorney hereby certifies that the following document:

GOVERNMENT'S SENTENCING MEMORANDUM

was served on November 14, 2023, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

    */s/ Victor B. Yanz*
Victor B. Yanz
Trial Attorney, Department of Justice
219 South Dearborn Street
Chicago, Illinois
(202) 591-5418